Shaun Setareh (SBN 204514)
  shaun@setarehlaw.com
Thomas Segal (SBN 222791)
  thomas@setarehlaw.com
Farrah Grant (SBN 293898)
  farrah@setarehlaw.com
**SETAREH LAW GROUP**
9665 Wilshire Boulevard, Suite 430
Beverly Hills, California 90212
Tel: (310) 888-7771
Fax: (310) 888-0109

Attorneys for Plaintiff,
DEBORAH HUBBARD

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH HUBBARD, on behalf of herself, all other similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>HENKEL CORPORATION, a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No. 4:19-cv-04346-JST<br><br>**AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>_**Hearing Information**_<br>Date:   TBD<br>Time:   TBD<br>Courtroom: 6<br>Judge:   Hon. Jon S. Tigar<br><br>_**Submitted Under Separate Cover**_<br> 1. Declaration of Shaun Setareh;<br> 2. [Proposed] Order |

**AMENDED NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on a date and time to be determined, in Courtroom 6 of the above-captioned Court, located at 1301 Clay Street, Oakland, California 94612, the Honorable Jon S. Tigar presiding, Plaintiff Deborah Hubbard ("Plaintiff"), on behalf of herself and all others similarly situated, will, and hereby does, move this Court to:

(1)   Preliminarily approve the settlement described in the Settlement Agreement, attached as Exhibit 1 to the Declaration of Shaun Setareh;

(2)   Approve distribution of the proposed Notice of Class Settlement to the Settlement Class;

(3)   Appoint Plaintiff Deborah Hubbard as Class Representative;

(4)   Appoint Setareh Law Group as Class Counsel;

(5)   Appoint JND Legal Administration as claims administrator; and

(6)   Set a hearing date and briefing schedule for final settlement approval and Plaintiff's fee and expense application.

This Motion is based upon: (1) this Amended Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in Support of Amended Motion for Preliminary Approval of Class Action Settlement; (3) the Declaration Shaun Setareh; (4) the Settlement Agreement; (5) the revised Notice of Class Action Settlement; (6) the [Proposed] Order Granting Preliminary Approval of Class Action Settlement; (7) the records, pleadings, and papers filed in this action; and (8) such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

Respectfully submitted,

Dated:  March 26, 2021                    SETAREH LAW GROUP


BY:   /s/ Shaun Setareh
                    SHAUN SETAREH
                    THOMAS SEGAL
                    FARRAH GRANT
                    Attorneys for Plaintiff
                    Deborah Hubbard

# **TABLE OF CONTENTS**

I. INTRODUCTION…………………………...………………………………..………..1

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY………...…………….….………..4

   A.  Overview of the Litigation…..…………………………………………………...…....4

   B.  Summary Of Claims …………………………...…….………………….5

      1. Off the Clock Violations………..………………...…..…………………....…….5

      2. Failure to Reimburse for Business Expenses..…………..……………………..…...6

      3. Meal & Rest Periods……………………….………………………….…....7

         a.  *Brinker* mandates that an employer must relieve employees of all duty

           and relinquish control over employee activities……..…………………………..…7

         b.  Defective Meal Period Policies and Practices.………………………………….8

         c.  Defective Rest Period Practices.……………………………...…………….9

      4. Failure to Properly Calculate the Regular Rate of Pay…………………………………9

      5. Claims Under Lab. Code §§ 203 and 226 and the UCL…………………………….10

      6. Claims Under PAGA……………………………………………….…………….10

      7. Class Certification………………………………………..……….10

      8. Summary of Relevant FCRA Law………………………………………....11

         a.  The Landmark Syed Decision……………………………………….11

      9. The Disclosure Form at Issue………………………….....................12

   C.  Mediation and Settlement Discussions………………………………………13

   D.  Material Terms of the Proposed Class Action Settlement……………………………14

      1. The Proposed Settlement Class………………………………………14

      2. The Settlement Benefits………………………………………………16

      3. Escalator Clause……………………………………………………16

      4. A Narrow Release………………………………………………….17

      5. A Consumer-Friendly Claims Process………………………………...17

      6. The Proposed Notice to the Settlement Class……………………….…………18

      7. Proposed Attorney's Fees, Litigation Expenses, & Service Awards…………………..……18

i

8. Payment to Settle Private Attorney General Act (PAGA) claim…………………….....19

III. ARGUMENT……………………………………………………..……........................20

  A. The Court Should Grant Preliminary Approval of the Class Settlement……..…………….....20

    1. The Standard for Preliminary Approval Has Been Met …..………………;;;;;;;;;;;;;;;;;;;;….20

    2. The Settlement Is Reasonable In Light of the Strengths and Weaknesses of Plaintiff's Case……………………………………………………………………………………..21

    3. The Risk, Expense and Complexity of the Case, Including the Risk of Decertification, Favor Approval of the Settlement……………………….…………………………………...25

    4. The Amount Offered in Settlement Supports Approval…………………………….....28

      a. The Amount Offered in Settlement Supports Approval of the Wage and Hour Settlement Class……………………………………………………………………………28

      b. Fairness of the PAGA Act……………………………………………………….30

      c. The Amount Offered in Settlement Supports Approval of the FCRA Settlement Class……………………………………………………..…………………………32

        i. The Release of State Claims Under the ICRAA and CCRA is Warranted……34

    5. The Settlement Was Finalized After a Thorough Investigation………..……………....36

    6. The Views of Experienced Counsel Should Be Accorded Substantial Weight…………..36

  B. Conditional Class Certification Is Appropriate for Settlement Purposes……………………...37

    1. The Proposed Class Meets the Requirements of Rule 23……………………………....37

    2. The Proposed Class Is Sufficiently Numerous …………………………………….....37

    3. There are Questions of Law and Fact that Are Common to the Class...............................37

    4. Plaintiff's Claims Are Typical of the Proposed Settlement Class…………….…..…...38

    5. Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of the Proposed Settlement Class……………………………………………………….39

    6. Common Issues Predominate Over Individual Issues …………………………………..39

    7. Class Settlement Is Superior to Other Available Means of Resolution………………..…39

  C. The Proposed Class Notice Adequately Informs Settlement Class Members About the Case and Proposed Settlement…………………………………..…………..……......40

ii

D.  Notice Pursuant to the Class Action Fairness Act of 2005…………………..………………..42

E.  The Proposed Service Award to Plaintiff Is Fair………………………………………………..42

IV. CONCLUSION…………………………………………………………........................…..42

*Hubbard v. Henkel Corporation*

Amended Notice of Motion and Motion for
Preliminary Approval of Class Action Settlement

68917766v.1

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Trans Union* (C.D. Cal. 2007) 243 F.R.D. 377, 386………………………….……....17

*Amchem Prods. v. Windsor* (1997) 521 U.S. 591, 617, 620…………………...……………...30,33

*Armstrong v. Board of School Directors* (7th Cir. 1980) 616 F.2d 305, 314………...……….17

*Armstrong v. Davis* (9th Cir. 2001) 275 F.3d 849, 868…………….....…………………………32

*Bateman v. Am. Multi-Cinema, Inc.* (9th Cir. 2010) 623 F.3d 708, 723………...……………..20

*Boyd v. Bechtel Corp.,*(N.D. Cal. 1979) 485 F. Supp. 610, 624……………………………24, 29

*Churchill Village v. Gen. Elec* (9ᵗʰ Cir. 2004) 361 F.3d 566, 575………...………….……….17

*Eisen v. Porsche Cars North American, Inc.* (C.D. Cal. Jan. 30, 2014) Case No. 11- 09405, 2014 U.S. Dist. LEXIS 14301, 2014 WL 439006, at *13…………………………………………… 29

*Franklin v. Kaypro* (9th Cir. 1989) 884 F.2d 1222, 1225…………………………………….17

*Frank v. Estman Kodak Co.* (W.D.N.Y. 2005) 288 F.R.D. 174, 186……………………………29

*Gribble v. Cool Transps., Inc.* (C.D. Cal. 2008) 2008 U.S. Dist. LEXIS 115560, at *26………17

*Hanlon v. Chrysler Corp.*(9th Cir. 1998) 150 F.3d 1011, 1027………...……...…… 16, 31, 32, 33

*In re LDK Solar Secs. Litig.*, (N.D. Cal. 2010) 2010 U.S. Dist. LEXIS 87168, *6………….....24

*In re M.L. Stern Overtime Litig.,* No. 07-0118- BTM, 2009 U.S. Dist. LEXIS 31650, at *10 (S.D. Cal. Apr. 13, 2009)………………………………………………………………17

*In re Pac. Enters. Sec. Litig.* (9th Cir. 1995) 47 F.3d 373, 378…………………...……………..30

*In re Portal Software Inc. Sec. Litig.* (N.D. Cal. Nov. 26, 2007) No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3…………………………………………………………….…...22

*In re Toys 'R' Us-Del., Inc. FACTA Litig.*, (C.D. Cal. 2014) 295 F.R.D. 438, 451, 453-54.....4,20

*Lane v. Facebook, Inc.* (N.D. Cal. Mar. 17, 2010) No. 08-3845-RS, 2010 U.S. Dist. LEXIS 24762, *4……...………………………………………………………………………..22

*Linney v. Cellular Alaska Partnership* (9ᵗʰ 1998)151 F. 3d1234, 1239, 1242 ………...9,28,29

*Long v Tommy Hilfiger U.S.A.*(3d Cir. 2012) 671 F.3d 371………………………….……....19

*London v. Wal-Mart Stores, Inc.* (11th Cir. 2003) 340 F.3d 1246, 1255 n.5…………………....20

*Lozano v. AT&T Wireless Services, Inc.* (9th Cir. 2007) 504 F.3d 718, 734……………………32

iv

1  *Marisol v. Giulian* (2nd Cir. 1997) 126 F.3d 372, 376…………………………..………....…32

2  *Miller v. CEVA Logistics USA Inc.*, (N.D. Cal. 2015) 2015 WL 729638, *7………….…..23,24

3  *Mullane v. Central Hanover Bank & Trust Co.* (1950) 339 U.S. 306, 314………………..……34

4  *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.* (C.D. Cal. 2004) 221 F.R.D. 523, 525-

5      527………………………………....………………………………………………..18

6  *Netflix Privacy Litig.* (N.D. Cal. Mar. 18, 2013) No. 5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS

7      37286, at 11……………………………..……….………………………………17

8  *O'Connor v. Uber Techs, Inc.*, 201 F. Supp. 3d 1135 (N.D. Cal. 2016)…………………...25

9  *Officers for Justice v. Civil Serv. Comm'n* (9th Cir. 1982) 688 F.2d 615, 625……………......18

10  *Parra v.Bashas,' Inc.* (9th Cir. 2008) 536 F.3d 975, 978-79……………………..……..…..31

11  *Ramirez v. Trans Union, LLC*(N.D. Cal. 2014) 301 F.R.D. 408, 417-418…………………..27,31

12  *Rodriguez v. Hayes* (9th Cir. 2010) 591 F.3d 1105, 1124……………………..……...............32

13  *Rodriguez v. West Publishing Corp.* (9th Cir. 2000) 563 F.3d 948……………….18,22,23,24,27

14  *Safeco Ins. Co. of Am. v.Burr* (2007) 551 U.S. 47, 57-59……………………………….……19

15  *Serna v. Big A Drug Stores, Inc.* (C.D. Cal. Oct. 9, 2007) No. 07-0276 CJC, 2007 U.S. Dist. LEXIS

16      82023, *10…………………….……………………………….………………...20

17  *Shlahtichman v 1-800 Contacts, Inc.* (7th Cir. 2010) 615 F.3d 794………………….…..………19

18  *Stanton v. Boeing Company* (9th Cir. 2003) 327 F.3d 938, 952………………………………..17

19  *Stovall-Gusman v. W.W. Granger, Inc.*, (N.D. Cal. 2015) 2015 U.S. Dist. LEXIS 78671,

20      *12-13………………..……………………………………………………………24

21  *Syed v. M-I LLC* (E.D. Cal. Oct. 22, 2014) No. 1:14-742-WBS, 2014 U.S. Dist. LEXIS 150748, **8-

22      10………………………………………………………………………..…9,10,12,19,22,27

23  *Torres v. Pet Extreme* (E.D. Cal. Jan. 15, 2015) No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136,

24      *13……………………………………………………………………..……....20

25  *Torrisi v. Tuscson Elec.* (9th Cir. 1993) 8 F.3d 1370, 1376……..……………………………18

26  *Toys 'R' Us-Del., Inc. FACTA Litig.* (C.D. Cal. 2014) 295 F.R.D. 438, 451…………………...20

27  *Vasquez v. Coast Valley Roofing, Inc.* (E.D. Cal. 2010) 266 F.R.D. 482, 489…………….…22,30

28  *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198-EMC, 2016 WL 5907869……………………25

v

1   *Wal-Mart Stores, Inc. v. Dukes*, (2011) 131 S. Ct. 2541, 2551……………………..………..….31

2   *Willes v State Farm Fire & Cas. Co.* (9th Cir. 2008) 512 F.3d 565, 566…………………………19

3   *Wolin v. Jaguar Land Rover N. Am.* (9th Cir. 2010) 617 F.3d 1168, 1175…………………..33

4   **Statutes**

5   15 U.S.C. § 1681………………………………………………………2, 9, 10, 12, 14, 19, 20, 27

6   Lab. Code § 204……………………..…………………………………………………………..2, 21

7   Lab. Code §206(e)……………………………………………………………………………..21

8   Lab. Code § 223…………………………………………………………………..……………2

9   Lab. Code § 226……………………………………………………………………………2,5,7

10  Lab. Code § 510…………………………………………………………….………………....2

11  Lab. Code § 512………………………………………………..………………………………2

12  Lab. Code § 1194………………………………………………………………………….....2

13  Lab. Code § 1197………………………………………………………………………….....2

14  Lab. Code § 1198……………………………………………………………………….....2

15  Lab. Code § 2699(e)(2)……………………………………………………………….23,25,26

16  Fed. R. Civ. P. 23………………………………………………………………16,30,31,32,33

17  **Other**

18  Cal. Bus. & Prof. Code §§ 17200……………………………………………..………2,14,15

19  *Manual for Complex Litigation § 21.632 (4th ed. 2004)*……………….………………..…16, 17

20

21

22

23

24

25

26

27

28

*Hubbard v. Henkel Corporation*

Amended Notice of Motion and Motion for
Preliminary Approval of Class Action Settlement

68917766v.1

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## I.    INTRODUCTION

3      In its February 25, 2021 Order Denying Preliminary Approval of Class Action Settlement (ECF

4   No. 40) (the "Order"), the Court listed several issues that the Parties needed to address regarding the

5   Motion for Preliminary Approval and the Class Notice before approval of the Settlement could be

6   granted.  The Parties have conferred on these issues, and Plaintiff now submits this Amended Motion

7   for Preliminary Approval of Class Action Settlement which addresses each of them.  The following

8   chart lists the issues raised by the Court and where in her Motion and concurrently filed supporting

9   papers Plaintiff has addressed the issues raised by the Order:

10

| | Issue to address | Where Addressed |
|---|---|---|
| 1 | Plaintiff does not provide a sufficiently clear description of the proposed FCRA settlement class.  Plaintiff should clearly identify each category of persons included in or excluded from the proposed class. | Am. Motion, p. 15 |
| 2 | Plaintiff should explain why the motion for preliminary approval seeks only to certify a single class under the wage and hour claims rather than the multiple sub-classes alleged in the FAC. | Am. Motion, pp. 14-15 |
| 3 | The settlement releases claims that have never been part of the litigation under the California ICRAA and CCRA without explanation of their connection or potential value. | Am. Motion, pp. 34-35 |
| 4 | Plaintiff identifies potential defenses that Defendant might raise against her wage and hour and FCRA claims, but the motion fails to sufficiently analyze the strengths of each potential defense. | Am. Motion, pp. 21-25 |
| 5 | Plaintiff has not provided the Court with enough information to determine whether the settlement amount of $1,635,550 for the wage and hour class represents a reasonable compromise of the class's claims. | Am. Motion, p. 29 |
| 6 | The 45-day response period to opt out, object, or dispute incorrect information is too short. Courts in this district recommend providing at least 60 days for a class member to opt out or object after the notice is mailed. | Am. Notice, pp. 1, 3, 4; Am. Motion, pp. 18, 41 |
| 7 | The proposed notice seeks extraneous information from class members who wish to opt out of or object to the settlement. | Am. Notice, pp. 3, 4 |
| 8 | The proposed notice lacks an explanation of the Court's authority to approve or deny a settlement and "should make clear that the Court can only approve or deny the settlement and cannot change the terms of the settlement." | Am. Notice, p. 4 |

27

28

*Hubbard v. Henkel Corporation*                    Amended Notice of Motion and Motion for
                                                    Preliminary Approval of Class Action Settlement

| 9 | The notice plan does not specify by how many days the objection period will be extended for class members who receive their notice late due to initial mailing errors or because the notice initially returned undeliverable. The notice should make clear to class members that the deadline to object or respond is extended if a mailing is delayed. | Am. Notice, pp. 3, 4 |
| --- | --- | --- |
| 10 | The notice plan does not indicate whether class members will have the opportunity to object to attorney's fees. There must be an opportunity for class members to object to the fee motion after it is filed. The parties should propose either (1) a single objection/exclusion deadline for both the substantive settlement and the fee motion, after the fee motion has been filed, or (2) a second objection deadline for the fee motion. | Am. Notice, p. 4; Am. Motion, p. 41 |
| 11 | The proposed notice should also include instructions on how to access the docket online via PACER. Even then, PACER charges a fee to view court documents and the proposed notice does not provide a free means for class members to access the settlement and related documents. The website in the proposed notice suggests that it will only provide access to the operative complaint and directs class members to find the rest of the case file in person at the courthouse in Oakland, California. Class members should not have to travel to the Court or pay a fee to review the information necessary to make an informed choice as to whether to opt out of the class or object. | Am. Notice, p. 7 |
| 12 | The notice provides an incomplete address for the Court. The correct address is Ronald V. Dellums Federal Building and United States Courthouse, Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland, California 94612. | Am. Notice, p. 4 |
| 13 | Counsel does not provide a lodestar calculation with which to cross-check the reasonableness of the amount of attorneys' fees to be requested. | Am. Motion, p. 19; Setareh Decl., ¶ 23 |
| 14 | Plaintiff does not include any justification for counsel's request of 33.33% of the settlement amount in the motion for preliminary approval. In addition to providing their lodestar calculation, Plaintiff's counsel should be prepared in future briefing to justify the proposed departure from the 25% benchmark. | Am. Motion, pp. 3, 18, 19; Setareh Decl., ¶ 23 |
| 15 | Though Plaintiff explains the difference between the proposed FCRA settlement class in the motion and the FCRA class in the FAC, there is no such explanation for why Plaintiff now seeks to certify a single wage and hour class for settlement purposes. | Am. Motion, pp.14-15 |
| 16 | In his declaration, Plaintiff's counsel should provide more information regarding at least one prior class action settlement. | Setareh Decl., ¶ 50 |

Plaintiff Deborah Hubbard ("Plaintiff") moves the Court to preliminarily approve a class action

settlement ("Settlement Agreement") with Defendant Henkel Corporation ("Henkel" or "Defendant")

*Hubbard v. Henkel Corporation*                    Amended Notice of Motion and Motion for
                                                   Preliminary Approval of Class Action Settlement

that confers substantial relief to all Settlement Class Members with a non-reversionary settlement fund of $2,125,000. The Settlement has two Settlement Classes, a Wage and Hour Settlement Class and a Fair Credit Reporting Act "FCRA" Settlement Class. The Wage and Hour Settlement Class involves allegations of failure to provide meal and rest breaks, failure to pay for off-the-clock work, failure to reimburse for cell phone expenses and failure to properly calculate the regular rate of pay. The FCRA Settlement Class involves allegations of obtaining pre-employment background checks without providing legally compliant disclosure forms.

Plaintiff now moves for preliminary approval of the Settlement Agreement. The Settlement Agreement is an excellent result. 77% of the Net Settlement Fund (i.e., $1,635,550) will be allocated to the Wage and Hour Settlement Class and 23% (i.e., $489,450) will be allocated to the FCRA Settlement Class. The Wage and Hour Settlement Class is comprised of approximately 568 individuals. The FCRA Settlement Class is comprised of approximately 6,527 individuals. The Settlement Agreement assumes the following deductions will be made: 33.33%[1] is awarded in attorneys' fees, $20,000 is awarded in litigation expenses, $40,000 is awarded in settlement administration costs, $7,500 is awarded as a class representative service award and $56,250.00 is paid to the Labor Workforce Development Agency. For the Wage and Hour Settlement Class the gross settlement payment will be $2,879.47 per class member ($1,635,550/568)(although of course this will be adjusted based on workweeks). For the FCRA Settlement Class the gross settlement payment will be $74.98 per class member ($489,450/6,527). The Wage and Hour settlement amount of $1,635,550 is 29.23% of the maximum damages of $5,594,973.69. (Declaration of Shaun Setareh "Setareh Decl." ¶ 36.) The FCRA Settlement amount of $489,450 is 75% of the $652,600 FCRA damages amount assuming a $100 statutory penalty per violation. (*Id.* ¶ 40).

The settlement is non-reversionary. No class members will have to make a claim. Instead, checks will be mailed to them directly. Settlement checks that have not been cashed after 180 days will

---

[1] Pursuant to the Order, Plaintiff will not seek the 33.33% maximum amount permitted under the Settlement Agreement but will instead now only seek 25% of the Gross Settlement Amount according to the Ninth Circuit benchmark.  (Setareh Decl., ¶ 23.)

*Hubbard v. Henkel Corporation*                    Amended Notice of Motion and Motion for
                                                   Preliminary Approval of Class Action Settlement

1    be voided and will be tendered to the *cy pres* beneficiary Bay Area Legal Aid.

2         With a full understanding of the strengths and weaknesses of her case, Plaintiff engaged in

3    arms'-length negotiations with Defendant, finally reaching an agreement following extensive

4    negotiations and mediation.  (Setareh Decl. ¶ 8.)

5         In light of the risks of continuing with this litigation, Plaintiff submits that this proposed

6    settlement, which guarantees that all Settlement Class Members will be paid, is fair, reasonable, and

7    adequate. Accordingly, the parties respectfully request that the Court enter an order (a) granting

8    preliminary approval of the Settlement; (b) certifying the proposed Settlement Classes; (c) appointing

9    Plaintiff as the Class Representative; (d) appointing Setareh Law Group as Class Counsel; (e) approving

10   the parties' proposed form and method of giving Settlement Class Members notice of the action and the

11   proposed Settlement; (f) directing that notice be given to Settlement Class Members in the proposed

12   form and manner; and (g) setting a hearing date and briefing schedule for final settlement approval and

13   Plaintiff's fee and expense application.

14   **II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY**

15        **A.     Overview of the Litigation**

16        On June 26, 2019, Plaintiff filed a class action complaint in the Superior Court of the State of

17   California for the County of Contra Costa, individually and on behalf of a purported class of similarly

18   situated employees.  In the Class Action Complaint, Plaintiff asserted claims for: (1) violation of the

19   Fair Credit Reporting Act (15 U.S.C § 1681(b)(b)(2)(A)); (2) failure to provide meal periods (Cal. Lab.

20   Code §§ 204, 223, 226.7, 512, and 1198); (3) failure to provide rest breaks (Cal. Lab. Code § 204, 223,

21   226.7, and 1198); (4) failure to pay hourly wages (Cal. Lab. Code §§ 223, 510, 1194, 1194.2, 1197,

22   1197.1, and 1198); (5) failure to provide accurate wage statements (Cal. Lab. Code § 226(a)); (6) failure

23   to timely pay all final wages  (Cal. Lab. Code §§ 201, 202, and 203); and (7) unfair competition (Cal.

24   Bus. & Prof. Code §§ 17200, *et seq.*).

25        On August 29, 2019, Plaintiff filed a Private Attorneys General Act ("PAGA") complaint in the

26   Superior Court of the State of California for the County of Santa Clara, on behalf of herself and others

27   similarly situated, and the general public.  In the PAGA Action Complaint, Plaintiff asserted a single

28   cause of action seeking penalties under PAGA.

The Parties attended a mediation on April 28, 2020 with mediator Tripper Ortman, an experienced and well-regarded mediator. After arm's-length negotiations the Parties arrived at a Settlement memorialized in the Settlement Agreement. (Setareh Decl.¶ 8; Exhibit 1). The proposed Settlement was the culmination of protracted discussions between the Parties following a thorough analysis of the pertinent facts and law at issue.  At all times, the Parties' settlement negotiations have been non-collusive, adversarial, and at arm's length.

In connection with the prosecution of this Action and with mediation, Plaintiff obtained data about the claims and defenses, including training material, policies, time and punch data, compensation records and the relevant disclosure forms. (Setareh Decl. ¶ 7.) Before the mediation, the Parties each investigated the claims asserted, the legal authorities supporting and challenging them, and prepared detailed mediation briefs. (Setareh Decl., ¶ 8.)

Pursuant to the Settlement Agreement, on July 27, 2020, Plaintiff requested and was granted dismissal without prejudice of the PAGA Action that had been pending in Superior Court of California, County of Santa Clara (Case No. 19CV354211).  (Settlement Agreement ¶ 2.3; Setareh Decl. ¶ 5). Then, on July 28, 2020, the Parties filed a Joint Stipulation to allow Plaintiff to file a First Amended Class Action Complaint ("FAC"), adding a claim under PAGA, and other claims and theories encompassed by the settlement, including claims for failure to reimburse business expenses, to ensure that all included claims and theories are clearly articulated and covered.  (ECF No. 32.)  The Court granted leave to file the FAC, and Plaintiff filed the FAC the same day.  (ECF Nos. 35, 36.)

### B.    Summary of Claims

#### 1.    Off the Clock Violations

Plaintiff alleges that Wage and Hour Settlement Class Members were required to stop at the facility gate in their car and go through a security check before entering the facility. The security guard checked to make sure the class members had clearance to enter the facility each time they entered the facility. After undergoing the security check, Plaintiff and class members drove their car to the parking area, parked their cars, and walked to the area they were assigned to and clocked in. This travel time was under Defendant's control. When they approached the time clock, they had to scan in their badge, run their finger through the fingerprint scanner and punch in their code to be clocked in. Accordingly,

Amended Notice of Motion and Motion for
Preliminary Approval of Class Action Settlement

1   by the time Plaintiff and the putative class logged in for their shift, approximately seven and a half

2   minutes had passed – all of which were not properly recorded as time worked and which resulted in

3   Plaintiff and the putative class not being paid for all hours worked by Defendant. (Setareh Decl. ¶ 30).

4       The Settlement Class Members also have a claim for off-the-clock work due to receiving text

5   messages from supervisors before or after their shift. (*Id.* ¶ 31)

6       Under California law, employees must be paid for all "hours worked." Wage Order No. 1. This

7   includes all time that the employees are subject to the control of the employer. *Id.* § 2(G.) As the

8   California Supreme Court has held, an employee must be paid whenever they are subject to the control

9   of an employer. *Morrillion v. Royal Packing Company,* 22 Cal.4th 575, 582 (2000.) Settlement Class

10  Members were entitled to overtime pay at "One and one-half (1 1/2) times the employee's regular rate

11  of pay for all hours worked in excess of eight (8) hours up to and including twelve (12) hours in any

12  workday…"; Wage Order No. 1 § 3. Plainly, Defendant's employees are subject to Defendant's control

13  when they are passing through security checks. Therefore, they must be compensated for the time.

14              **2.        Failure to Reimburse for Business Expenses**

15      Henkel did not pay class members for their personal cell phone bills. As a result of performing

16  off-the-clock work that was directed, permitted or otherwise encouraged by Defendant, Plaintiff and the

17  putative class should have been paid for this time. Due to the work-related use of their personal cell

18  phones, the class members have a reimbursement claim under Labor Code section 2802. Labor Code

19  section 2802(a) states:

20      An employer shall indemnify his or her employee for all necessary expenditures or losses
        incurred by the employee in direct consequence of the discharge of his or her duties, or of
21      his or her obedience to the directions of the employer, even though unlawful, unless the
        employee, at the time of obeying the directions, believed them to be unlawful.
22

23  Plaintiff and Wage and Hour Settlement Class Members incurred necessary business-related expenses

24  and costs for maintaining their personal cell phones. Defendant did not compensate Plaintiff or Wage and

25  Hour Settlement Class Members for such cell phone expenses.

26  ///

27  ///

28  ///

3.    **Meal & Rest Breaks**

a.    ***Brinker* mandates that an employer must relieve employees of all duty and relinquish control over employee activities**

In California, employers must "provide" a 30-minute duty free meal period to an employee if the employee works more than 5 hours in a workday.  *See* Cal. Lab. Code §§ 226.7, 512; Wage Order 1 at § 11.  "Unless the employee is relieved of all duty during a 30-minute meal period, the meal period shall be considered 'on duty' and counted as time worked."  Wage Order 1 at § 11.  If an employer fails to provide a legally sufficient meal period to an employee, the employer must pay the employee an additional hour of pay for each day the meal period was not provided. *Id.*; Lab. Code § 226.7(b).

In *Brinker Restaurant Corp. v. Sup. Ct.* (2012) 53 Cal.4th 1004 the California Supreme Court provided guidance regarding an employer's obligation to provide meal periods to its employees. *Brinker* holds that an employer must take the active step of "afford[ing] an off duty meal period," which means "actually relieving an employee of all duty" and "***relinquish[ing] control over their activities***." *Brinker* at 1039 (emphasis added).

Here, Defendants deprived Settlement Class Members' of their meal breaks because: (1) Defendant's security check policies prevented employees from leaving the facility if they wanted a full 30-minute meal break; (2) Defendant did not have a fully compliant formal written meal period policy; (3) Defendant did not schedule each meal period as part of each work shift; (4) Defendant chronically understaffed each work shift; and (5) Defendant imposed so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time.

The employer obligation to "relinquish control" over employee activities prohibits employers from requiring employees to remain on premises during meal periods.  This has long been the law in California, and it was explicitly affirmed by our Supreme Court in *Brinker*:

> In 1988, the DLSE noted it "has historically taken the position that unless employees are relieved of all duties **and are free to leave the premises**, the meal period is considered as 'hours worked.' " (Dept. Industrial Relations, DLSE Opinion Letter No. 1988.01.05 (Jan. 5, 1988) p. 1.) Three years later, in response to a question concerning employees working in the field free of direct supervision and control, it advised that if "the employee has a reasonable opportunity to take the full thirty-minute period free of any duty, the employer has satisfied his or her obligation. The worker must be free to attend to *any* personal

business he or she may choose during the unpaid meal period." (Dept. Industrial Relations, DLSE Opinion Letter No. 1991.06.03 (June 3, 1991) p. 1.)  As these opinion letters make clear, and as the DLSE argues in its amicus curiae brief, the wage order's meal period requirement is satisfied if the employee (1) has at least 30 minutes uninterrupted, (2) *is free to leave the premises*, and (3) is relieved of all duty for the entire period. (DLSE Opinion Letter No. 1988.01.05, *supra*, at p. 1; Dept. Industrial Relations, DLSE Opinion Letter No. 1996.07.12 (July 12, 1996) p. 1.) ***We agree with this DLSE interpretation of the wage order***.

*Brinker*, *supra*, 53 Cal.4th at 1036 (emphasis added).

Brinker further affirmed this principle when it recognized that "the fundamental employer obligations associated with a meal break" are to "relieve the employee of all duty and relinquish any employer control over the employee *and how he or she spends the time*."  *Brinker*, 54 Cal. 4th at 1038-1039 (emphasis added).  By restricting an employee to the employer's premises, the employer necessarily exerts control over "how he or she spends the time" and thereby fails to meet its obligation to provide a duty-free meal period.

### b.   Defective Meal Period Policies and Practices

Defendant did not have fully compliant meal break policies. For the period of June 26, 2015 to July 2016, Defendant's break policy was deficient it that it only stated: "Your schedule, including rest and meal periods, will be set by local management." (Setareh Decl. ¶ 33). Henkel's Employee Handbook Supplement for California Employees 2016 and 2018 have more detailed and compliant language regarding breaks but are still deficient in that they do not state that premium pay will be paid when employees do not receive a full, 30-minute, uninterrupted meal break.

Defendant also did not have compliant meal break practices. Because of Defendant's security check policies, class members were not able to leave the facility if they wanted a full 30-minute meal break. Defendant did not schedule each meal period as part of each work shift. Additionally, Defendant chronically understaffed each work shift. Moreover, Defendant imposed so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time.

Thus, Plaintiff and Settlement Class Members often did not receive full 30-minute uninterrupted meal breaks. Plaintiff contends that Defendants failed to provide compliant meal periods, and therefore owe class members premium wages for missed meal periods. (*See* Lab. Code § 226.7; IWC Wage

8

1   Order 1, § 11; *see also Bradley v. Networkers Int'l, LLC* (2012) 211 Cal.App.4th 1129; *Benton v.*

2   *Telecom Network Specialists, Inc.* (2013) 220 Cal.App.4th 701). In sum, the evidence is clear that

3   Defendants failed to comply with the standards set forth in *Brinker* and its progeny, which require an

4   employer, at minimum, to have compliant meal period policies.

**c.    Defective Rest Period Practices**

6         Settlement Class Members often were unable to take a rest break due to: (1) Defendant not

7   having a compliant formal written rest period policy; (2) Defendant's policy of not scheduling each rest

8   period as part of each work shift; (3) Defendant chronically understaffing each work shift with not

9   enough workers; and (4) Defendant imposing so much work on each employee such that it made it

10  unlikely that an employee would be able to take their breaks if they wanted to finish their work on time.

11        Defendant did not have fully compliant rest break policies. For the period of June 26, 2015 to

12  July 2016, Defendant's break policy was deficient it that it only stated: "Your schedule, including rest

13  and meal periods, will be set by local management." (Setareh Decl. ¶ 33). Henkel's Employee

14  Handbook Supplement for California Employees 2016 and 2018 have more detailed and compliant

15  language regarding breaks but are still deficient in that they do not state that premium pay will be paid

16  when employees do not receive a 10-minute uninterrupted rest break. Henkel's rest break policy is also

17  flawed, as it requires employees to stay on premises: "Rest periods are counted and paid as time

18  worked. Therefore, Employees may not leave the premises or be absent from the work areas beyond the

19  allotted time."

20        Plaintiffs contend that Defendants failed to provide compliant rest periods, and therefore owe

21  class members premium wages for missed rest periods. (*See* Lab. Code § 226.7; IWC Wage Order 1, §

22  12; *see also Bradley v. Networkers Int'l, LLC* (2012) 211 Cal.App.4th 1129; *Benton v. Telecom*

23  *Network Specialists, Inc.* (2013) 220 Cal.App.4th 701). In sum, the evidence is clear that Defendants

24  failed to comply with the standards set forth in *Brinker* and its progeny, which require an employer, at

25  minimum, to have compliant rest period policies.

**4.    Failure to Properly Calculate the Regular Rate of Pay**

27        Labor Code § 510 and Section 3 of Wage Order 1 require employers to pay non-exempt

28  employees overtime wages of no less than one and one-half times their respective regular rates of pay

9

1    for all hours worked in excess of eight hours in one workday, all hours worked in excess of forty hours

2    in one workweek, and/or for the first eight hours worked on the seventh consecutive day of one

3    workweek.

4            The regular rate of pay under California law includes all remuneration for employment paid to, on

5    behalf of, the employee. This requirement includes, but is not limited, to, commissions, non-

6    discretionary bonuses, and shift differentials.

7            Plaintiff received shift differential pay for working "second shift" which was the night shift.

8    Plaintiff and the Wage and Hour Settlement Class Members were paid at a shift differential of $1.00 per

9    hour and at a differential overtime rate of $1.50 per hour. The shift differential pay here was not

10   discretionary, as it was a consistent, set amount and given when the employee worked a second shift.

11   Thus, under California law, Defendant was required to include the premium pay in calculating class

12   members' regular rate of pay. However, when Wage and Hour Settlement Class Members received

13   their wage statements, their pay was not appropriately calculated because this differential was not

14   included in their regular rate of pay.

15                   **5.        Claims Under Lab. Code §§ 203 and 226 and the UCL**

16           Plaintiff's claims under Labor Code §§ 203 and 226 and the UCL are also derivative of the

17   foregoing claims for failure to pay for all time worked, failure to reimburse, failure to properly calculate

18   the regular rate of pay failure to provide meal and rest periods.

19                   **6.        Claims Under PAGA**

20           No scienter is necessary for recovery of civil penalties under PAGA.  But these penalties are

21   admittedly discretionary, and the Court could choose to award a very low amount in PAGA penalties or

22   no amount at all.  (*See* Lab. Code § 2699(e)(2).)  Defendant would argue that it is unfairly duplicative to

23   award both Labor Code § 203 penalties and PAGA penalties.

24                   **7.        Class Certification**

25           Defendant also contends that Plaintiff would not be able to obtain class certification of her

26   claims in a non-settlement context.  Defendant contends this case would not be certified since, among

27   other things, potential individualized issues by job site and job duties.  Accordingly, given the

28   differences among putative class members, Defendant contends that Plaintiff would not be able to

*Hubbard v. Henkel Corporation*                                    Amended Notice of Motion and Motion for
                                                                   Preliminary Approval of Class Action Settlement

obtain class certification. Defendant denies Plaintiff's allegations and has raised defenses that go both to

class certification and the merits. Defendant's position is that it has maintained compliant policies

throughout the relevant time period, has properly calculated the regular rate, and has otherwise

maintained legally compliant practices.

Thus, although Plaintiff was prepared to litigate this case through class certification and,

ultimately, to trial, Plaintiff also recognizes that there were significant risks in going forward with

litigation, both on the merits and in terms of class certification.

### 8. Summary of Relevant FCRA Law

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b(b), requires employers to use

certain documents and to follow specified policies and practices when they use "consumer reports" to

assess the qualifications of prospective and current employees.

Pursuant to Section 1681b of the FCRA, no person can obtain a consumer report for

employment purposes without providing a "clear and conspicuous disclosure . . .in a document that

consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i.) The person obtaining the consumer

report must also obtain the consumer's written authorization which can be done as part of the disclosure

form. 15 U.S.C. § 1681b(b)(2)(A)(ii.) A plaintiff may be entitled to statutory and punitive damages

when a defendant has willfully violated the provisions of the FCRA. 15 U.S.C. § 1681n(a)(1)(A): "any

person who willfully fails to comply with any requirement imposed under this subchapter with respect

to any consumer is liable to that consumer in an amount equal to the sum of . . . damages of not less

than $100 and not more than $1000 . . . such amount of punitive damages as the court may allow."

### a. The Landmark *Syed* Decision

In 2017 the Ninth Circuit issued a major decision on the issue of violation of the stand-alone

disclosure requirement of the FCRA. *Syed v. M-I, LLC*, 853 F.3d 492 (9th Cir. 2017.) In *Syed*, the

FCRA disclosure contained a term purporting to waive any liability of the employer related to the

background check. *Id.* at 498. The Ninth Circuit held that under the plain language of the FCRA the

required disclosure must be in "a document that consists solely of the disclosure" and that the inclusion

of the liability release was impermissible: "We must begin with the text of the statute. Where

congressional intent has been expressed in reasonably plain terms, that language must ordinarily be

1    regarded as conclusive . . . . The ordinary meaning of 'solely' is '[a]lone; singly' or entirely

2    exclusively." *Id*. at 500. The Ninth Circuit also held that due to the clarity of the statutory language

3    requiring that the disclosure be in a document consisting "solely" of the disclosure: "a prospective

4    employer's violation of the FCRA is "willful" when the employer includes terms in addition to the

5    disclosure." *Id*. at 496.

6        While *Syed* involved a liability release, its holding is broader. *Syed* broadly analyzed the

7    "solely" requirement governing the disclosure apart from any release language:

8        "It is our duty to give effect, if possible, to every clause and word of a statute." *United*
         *States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 99 L.Ed. 615 (1955) (internal
9        quotation marks omitted). M-I's interpretation fails to give effect to the term "solely,"
         violating the precept that "statutes should not be construed to make surplusage of any
10       provision." *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 804 (9th Cir.
         1989) (alterations and internal quotation marks omitted). ***That other FCRA provisions***
11       ***mandating disclosure omit the term "solely" is further evidence that Congress intended***
         ***that term to carry meaning in 15 U.S.C. § 1681b(b)(2)(A)(i). See*** 15 U.S.C. §§ 1681d,
12       1681s-3.

13    *Syed*, 853 F.3d at 501 (emphasis added).

14        Put in simplest terms, "solely" means just what it appears to mean, and, in Plaintiff's view *no*

15    implied exceptions to the "solely" requirement should be judicially added to the *one* express exception

16    allowing the authorization to accompany the correct disclosure. The FCRA expressly states that the *sole*

17    additional element that may be included with the disclosure is an authorization, "which authorization

18    may be made on the document referred to in clause (i). . . ." 15 U.S.C.A. § 1681b(b)(2)(A)(ii).

19        The United States Court of Appeals for the Ninth Circuit has found that a background check

20    document that Plaintiff contends is similar to the one here did not comply with the FCRA standalone

21    document requirement and was not clear. *Gilberg v. California Check Cashing Stores, LLC*, 913 F.3d

22    1169 (C.A.9 (Cal.), 2019).[2] The form in *Gilberg* included references to state rights, as Plaintiff alleges

23    regarding the form here.

24            **9.    The Disclosure Form at Issue**

25        The disclosure form in effect during the FCRA Settlement Class period class period (June 26,

26

27    _____

28        [2] Setareh Law Group is lead counsel in *Gilberg v. California Check Cashing Stores, Inc.*

2014 through December 1, 2019) is attached to the Declaration of Shaun Setareh as Exhibit 2.  The disclosure form attached as Exhibit 2 is three pages long and contains extraneous language including the following: 1) a paragraph regarding the release of medical records; 2) state law language; 3) a paragraph regarding federal law and state law prohibitions on discrimination in employment; 4) a statement of the applicant's prior names used and the dates those names were used; and 5) a statement of the applicant's 7-year residence history, including addresses and dates of residence.

This form is similar to *Poinsignon v. Imperva, Inc.*, where the court held that a FCRA disclosure that included references to state law, a URL link to a privacy policy, and an acknowledgment of another document – the "Summary of Rights under FCRA" – violated the FCRA's "stand alone" requirement and constituted a willful violation. *Poinsignon v. Imperva, Inc.*, No. 17-cv-05653-EMC, 2018 U.S. Dist. LEXIS 60161 (N.D. Cal. Apr. 9, 2018). The Court in *Poinsignon* stressed the importance of "[p]resenting the disclosure in a separate stand-alone document free from the clutter of other language" to call "consumers' attention to their rights and to the significance of their authorization." - an entire page of extraneous state law language. Thus, the form violates the standalone provisions of the FCRA.

**C.  Mediation and Settlement Discussions**

The proposed Settlement was the culmination of protracted discussions between the Parties following a thorough analysis of the pertinent facts and law at issue. The Parties attended a mediation on April 28, 2020 with mediator Tripper Ortman, an experienced and well-regarded mediator. After arms-length negotiations the parties arrived at a Settlement memorialized in the Settlement Agreement. (Setareh Decl., ¶¶ 8, 10, Exhibit 1). At all times, the Parties' settlement negotiations have been non-collusive, adversarial, and at arm's length.

In connection with the prosecution of this Action and with mediation, Plaintiff obtained data about the claims and defenses, including training material, policies, time and punch data, compensation records and the relevant disclosure forms. (Setareh Decl., ¶ 7.) Before the mediation, the parties each investigated the claims asserted, the legal authorities supporting and challenging them, and prepared detailed mediation briefs. (Setareh Decl., ¶ 8.)

At the mediation session, the parties engaged in extensive, adversarial, arm's-length negotiations and were able to reach a resolution.  Plaintiff now submits the Settlement to this Court for

1    preliminary approval.

2        **D.    Material Terms of the Proposed Class Action Settlement**

3            **1.        The Proposed Settlement Classes**

4        The Wage and Hour Settlement Class is defined to include "all non-exempt persons employed

5    by Defendant in the State of California during the period of June 26, 2015 through the date of

6    preliminary approval."  (Settlement Agreement § 1.46).

7        The definition of the Wage and Hour Settlement Class differs from the definition of the "Hourly

8    Employee Class" alleged in the FAC in two ways.  First, the relevant time period in the FAC runs "until

9    judgment is entered," while in the Settlement, the definition of Wage and Hour Settlement Class

10   Members uses the time period from June 26, 2016 until the date preliminary approval is granted.

11        This change was made to allow the Parties to identify all the Class Members and the number of

12   workweeks in the Class Period before mailing Class Notices so that Defendant would be provide the

13   Settlement Administrator with fixed data for the Class Members.  If the time period for identifying

14   Wage and Hour Settlement Class Members went through the date of judgment, the number of

15   workweeks could only be estimated and would introduce uncertainty into the payment amount stated in

16   the Notices.  Moreover, the number of Class Members could increase after mailing of the Class Notice,

17   diluting the Wage and Hour Settlement Share, depriving late-added Class Members of the opportunity

18   to opt out or to object to the Settlement, while binding them to its terms.  Finally, the FAC could not

19   define the time period for identifying Wage and Hour Settlement Class Members in terms of the date of

20   preliminary approval of settlement, since it is a pleading with a view to trial, not a stipulated settlement,

21   which can use such a definition, as was done here.

22        Second, the FAC named subclasses under the Hourly Employee Class (Meal Period, Rest

23   Period, Wage Statement Penalties, and Waiting Time Penalties Sub-Classes), while the Settlement did

24   not include any subclasses.  This change was made for ease of administration of the Settlement.  The

25   Complaint and FAC included these subclasses since, at the pleading stage, it is far from certain upon

26   which claims Plaintiff might prevail.  If, for example, the meal period claim were to fail as a matter of

27   law but the rest period claim were to remain, then the definition of the Rest Period Sub-Class could then

28   become the class definition for the wage and hour claims.  Here, in contrast, the Parties seek to settle

1    and release all the claims made in this Action.  Therefore, only the overarching Wage and Hour Class

2    definition is necessary.  This remains fair since each of the Wage and Hour Class Members will receive

3    a *pro rata* portion of the Wage and Hour Settlement Share based on the number of workweeks they

4    worked during the relevant time period.  Requiring a precise accounting of each of the wage and hour

5    claims per subclass and adducing the total for each class member would drastically increase the work

6    done by the Settlement Administrator, driving up administration costs, and reducing the Net Settlement

7    Amount payable to the Class.

8         The FCRA Settlement Class refers to "All individuals nationwide on whom Defendant procured

9    a consumer report between June 26, 2014 and December 1, 2019, and who did not receive a copy of

10   their report before June 26, 2017.  Defendant estimates that there are approximately 6,527 FCRA

11   Settlement Class Members." (Settlement Agreement § 1.19).

12        The definition of the FCRA Settlement Class is different than the definition in the complaint, in

13   that the FCRA Settlement Class period ends on December 1, 2019. This is because Defendant began

14   using a new compliant disclosure form on December 2, 2019. (Setareh Decl. ¶ 39.) The FCRA

15   Settlement class includes: (1) individuals on whom a background check was run prior to June 26, 2017

16   who did not receive a copy of their report before that date; and (2) individuals on whom a background

17   check was run between June 26, 2017 and December 1, 2019, regardless of whether they received a

18   report. This is appropriate as the five-year statute of limitations only applies if individuals were not on

19   constructive notice that the defendant employer obtained a report. The FCRA requires a plaintiff to

20   bring an action within the earlier of "(1) 2 years after the date of discovery by the plaintiff of the

21   violation that is the basis for [the employer's] liability; or (2) 5 years after the date on which the

22   violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.; *Syed v. M-I, LLC*, 853 F.3d 492,

23   506 (C.A.9 (Cal.), 2017). Thus, the FCRA Settlement Class definition is appropriate, because if an

24   individual received a report prior to June 26, 2017, they would not be able to argue that they did not

25   know a background report was obtained about them, and thus the 5-year statute of limitations would not

26   apply.  By contrast, individuals could have a claim between June 26, 2017 and December 1, 2019,

27   regardless of whether or not they received a copy of their report.

28

*Hubbard v. Henkel Corporation*                                    Amended Notice of Motion and Motion for
                                                                   Preliminary Approval of Class Action Settlement

2.     **The Settlement Benefits**

Under the Settlement, all Settlement Class Members who do not submit valid and timely Requests for Exclusion will receive a settlement check payment. The amount of the Settlement Benefit each Settlement Class Member will receive will be determined, based on the total amount of the Net Settlement Fund to be allocated among all Settlement Class Members and the total number of Settlement Class Members. 77% of the Net Settlement Fund (i.e., $1,635,550) will be allocated to the Wage and Hour Settlement Class and 23% will be allocated to the FCRA Settlement Class (i.e., $489,450). The Net FCRA Settlement Amount shall be allocated to FCRA Settlement Class Members on a *pro rata* basis. (Settlement Agreement § 5.5.2). Each Wage and Hour Settlement Class Member will be eligible to receive a portion of the Net Wage and Hour Settlement Amount based on the following formula:

> The individual Wage and Hour Settlement Share payment to a Wage and Hour Settlement Class Member will be calculated by dividing the number of Eligible Workweeks attributed to the Wage and Hour Settlement Class Member by all Eligible Workweeks attributed to members of the Wage and Hour Settlement Class, multiplied by the Net Wage and Hour Settlement Amount.  Otherwise stated, the formula for a Class Member is: (individual's Eligible Workweeks ÷ total Wage and Hour Settlement Class Eligible Workweeks) x Net Wage and Hour Settlement Amount.

(Settlement Agreement § 5.5.1).

Wage and Hour Settlement Class Members will be compensated based on the number of eligible workweeks worked. This proposed method is fair and reasonable because a Wage and Hour Settlement Class Member who worked a greater number of eligible workweeks for Defendant will have a larger potential claim than a Wage and Hour Settlement Class Member who worked for less eligible workweeks.

FCRA Settlement Class Members will each receive an equal pro rata share of the of the Net FCRA Settlement Amount.

3.     **Escalator Clause**

Defendant estimates that there are 6,526 FCRA Settlement Class Members.  If the actual number exceeds this number by more than 5%, the FCRA Settlement Share of the Gross Settlement Amount will be increased proportionally.  In other words, if the excess is 6%, the increase will be 1%, if the excess is 7%, the increase will be 2%.  (Settlement Agreement § 5.5.2).

Defendant estimates that the number of workweeks in the class period is 97,918.  If the actual number of workweeks exceeds this number by more than 5%, the Wage and Hour Settlement Share allocated from the Gross Settlement Amount will be increased proportionally.  In other words, if the excess is 6%, the increase will be 1%, if the excess is 7%, the increase will be 2%. (Settlement Agreement § 5.5.1).

### 4.    A Narrow Release

The Settlement provides for the following release of claims:

The released claims include, but are not limited to, any and all claims, debts, liabilities, demands, obligations, guarantees, penalties, costs, expenses, attorney's fees, damages, action or causes of action, contingent or accrued for, which relate to the allegations and claims asserted in the complaints filed in the Actions, including without limitation claims for: (1) violations of the Fair Credit Reporting Act (15 U.S.C. §§ 1681 *et seq.*); (2) failure to provide meal periods (Cal. Lab. Code §§ 204, 223, 226.7, 512, and 1198); (3) failure to provide rest breaks (Cal. Lab. Code § 204, 223, 226.7, and 1198); (4) failure to pay hourly wages (Cal. Lab. Code §§ 223, 510, 1194, 1194.2, 1197, 1197.1, and 1198); (5) failure to provide accurate wage statements (Cal. Lab. Code § 226(a)); (6) failure to timely pay all final wages  (Cal. Lab. Code §§ 201, 202, and 203); (7) unfair competition (Cal. Bus. & Prof. Code §§ 17200, *et seq.*) and (8) claims brought under the Private Attorneys General Act ("PAGA") (Cal. Lab. Code §§ 2698, *et seq.*); claims relating to background checks, including but not limited to claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.*, California Business & Professions Code §§ 17200 *et seq.*, California's Investigative Consumer Reporting Agencies Act ("ICRAA") and Consumer Credit Reporting Agencies Act ("CCRAA") and similar claims under background screening state laws; claims under California law for any alleged failure to pay all wages due (including minimum wage and overtime wages), failure to pay for all hours worked (including off-the-clock work), failure to provide meal and rest periods, short/late meal and rest periods, failure to relieve of all duties during meal and rest periods, auto-deduction of meal periods, failure to timely pay wages and final wages, failure to properly calculate the regular rate of pay, donning and doffing, time clock rounding, grace periods, shift tolerance, failure to furnish accurate wage statements including claims derivative and/or related to these claims, liquidated damages, conversion of wages, pre and post-shift work and record-keeping violations, and claims regarding failure to reimburse business expenses; claims under any and all applicable statutes, including without limitation any provision of the California Labor Code, California Labor Code §§ 2698, *et seq.*, California Business & Professions Code §§ 17200 *et seq.*, and any provision of the applicable California Industrial Welfare Commission Wage Orders; based on the facts or claims alleged in the complaints in the Actions, or any other benefit claimed on account of the allegations asserted in the operative complaints in the Actions.

(Settlement Agreement § 6.1.)

### 5.    A Consumer-Friendly Claims Process

The parties have negotiated a mailing procedure to minimize the burden to Settlement Class Members. Settlement Class Members will not have to submit a claim form in order to receive payment.

1    (Settlement Agreement § 3.1.)  Instead, the Individual Settlement Payments will be mailed by the

2    settlement administrator to the Settlement Class Members who do not opt out. Participating Class

3    Members will have 180 days to cash their settlement check. (Settlement, ¶ 5.5.3.) At the end of that

4    180-day period, settlement checks will be void "will be tendered to the cy pres beneficiary Bay Area

5    Legal Aid. (*Id.*) Bay Area Legal Aid's mission is to provide meaningful access to the civil justice

6    system through quality legal assistance regardless of a client's location, language or disability. Bay Area

7    Legal Aid's consumer protection practice includes assisting individuals with claims regarding Fair

8    Credit Reporting. This *cy pres* is appropriate, as Bay Area Legal Aid is located in the same area as the

9    Court where this case is proceeding, and because it assists low income individuals such as the

10   settlement class members in pursuing justice, including claims related to Fair Credit Reporting.

11              **6.       The Proposed Notice to the Settlement Class**

12              Within fourteen days of preliminary approval of the Settlement by the Court, Defendant shall

13   provide to the Settlement Administrator a confidential class list containing: (1) the names; (2) employee

14   ID numbers; (3) last known address and telephone number(s); (4) dates of active employment for Wage

15   and Hour Class Members; (5) number of Eligible Workweeks worked during the class period for Wage

16   and Hour Settlement Class Members; (6) social security numbers; (7) status as an FCRA Settlement

17   Class Member; and (8) status as a Wage and Hour Settlement Class Member.  (Settlement Agreement §

18   3.3.)  Within 14 days of receipt of the Class List, Class Members will be sent the Class Notice. (*Id.* §

19   3.4.)  Class Members will have 60 days from the later of the date of the mailing or re-mailing of the

20   Notices to postmark their objections or written requests for exclusion to the Settlement Administrator.

21   (*Id.*, Ex. A.)

22              **7.       Proposed Attorneys' Fees, Litigation Expenses, and Service Awards**

23              In accordance with the Court's Order Denying Preliminary Approval, though the Settlement

24   Agreement permit Plaintiff to seek up to one-third of the Gross Settlement Amount, Plaintiff will seek

25   an order from the Court awarding Class Counsel their reasonable attorneys' fees not to exceed 25% of

26   the  common fund, i.e, $531,250.00, and out-of-pocket costs incurred in this action in an amount not to

27

28

*Hubbard v. Henkel Corporation*                                   Amended Notice of Motion and Motion for
                                                                  Preliminary Approval of Class Action Settlement

exceed twenty thousand dollars. (Settlement, ¶ 5.2).[3]  The current lodestar and additional expected attorneys' fees anticipated to take the matter through final approval is provided in the following chart:

| Attorney | Bar Year | Rate | Current Hours | Current Fees | Anticipated Add'l Hours | Anticipated Add'l Fees |
|---|---|---|---|---|---|---|
| Shaun Setareh | 1999 | $900.00 | 81.25 | $73,125.00 | 30 | $27,000.00 |
| Thomas Segal | 2002 | $750.00 | 92.75 | $69,562.50 | 5 | $3,750.00 |
| William M. Pao | 2002 | $750.00 | 1.1 | $825.00 | | |
| Jose Patino | 2010 | $625.00 | 26.6 | $16,625.00 | 20 | $12,500.00 |
| Farrah Grant | 2013 | $450.00 | 84.3 | $37,935.00 | 5 | $2,250.00 |
| Robert A. Lopez | 2017 | $400.00 | 2.6 | $1,040.00 | | |
| Lilit Ter-Astvatsatryan | 2018 | $375.00 | 0.75 | $281.25 | | |
| **Total** | | | **289.35** | **$199,393.75** | (Anticipated) | **$244,893.75** |
| Fees Sought (25% GSA) | | | | $531,250.00 | | |
| **Multiplier** | | | | **2.66** | (Anticipated) | **2.17** |

(Setareh Decl., ¶ 23.)  The attorneys who will be handling the bulk of the final approval effort are Shaun Setareh and Jose Maria D. Patino, Jr.  Thomas Segal and Farrah Grant will also continue to contribute in handling day-to-day operations, fielding calls from Settlement Class Members, and coordination with the Settlement Administrator.  (*Id.*)

The Settlement Agreement provides that Plaintiff can seek a service award in the amount of $7,500. (Settlement § 5.3.)

**8.    Payment to Settle Private Attorney General Act (PAGA) Claim**

The Settlement allocates $75,000 to settle the Private Attorney General Act (PAGA) Labor Code section 2699 claim, of which 75% (i.e., $56,250.00) goes to the State of California and 25% (i.e. $18,750.00) is paid back into the Net Settlement Fund.[4] (Settlement Agreement § 1.3.5.)

///

///

///

---

[3] Plaintiff's counsel has already incurred costs of over $13,000 for items such as expert fees, mediation fees and filing fees. (Setareh Decl. ¶ 23.)

[4] Plaintiff will submit this motion to the LWDA the day that it is filed.

1   **III.     ARGUMENT**

2        **A.     The Court Should Grant Preliminary Approval of the Class Settlement**

3             **1.     The Standard for Preliminary Approval Has Been Met**

4        Class action settlements must be approved by the court, and notice of the settlement must be

5   provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A).  Court approval

6   occurs in three steps: (1) preliminary approval of the proposed settlement, including (if the class has not

7   already been certified) conditional certification of the class for settlement purposes; (2) notice to the

8   class providing them an opportunity to object or exclude themselves from the settlement; and (3) a final

9   fairness hearing concerning the fairness, adequacy, and reasonableness of the settlement. *See* Fed. R.

10  Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

11       In reviewing class action settlements, the court should give "proper deference to the private

12  consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

13  This reflects the longstanding policy in favor of encouraging settlement of class action suits, as

14  "[l]itigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent

15  in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for

16  both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v.*

17  *Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

18       In the preliminary approval stage, the Court first determines whether a class exists. *Stanton v.*

19  *Boeing Company*, 327 F.3d 938, 952 (9th Cir. 2003). Then, the Court evaluates "whether the settlement

20  is within the range of possible approval, such that there 'is any reason to notify the class members of the

21  proposed settlement and to proceed with a fairness hearing.'" *In re M.L. Stern Overtime Litig.*, No. 07-

22  0118- BTM, 2009 U.S. Dist. LEXIS 31650, at *10 (S.D. Cal. Apr. 13, 2009) (quoting *Armstrong v.*

23  *Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980)); *see also, Acosta v. Trans Union*, 243

24  F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the

25  settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at

26  the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out.")

27  (emphasis in original). In other words, the Court makes only a preliminary determination of the

28  settlement's fairness, reasonableness, and adequacy, granting preliminary approval unless the settlement

1  terms are so unacceptable that a formal fairness hearing would be a waste of time. *See* Manual for

2  Complex Litigation §21.632.

3       At the outset, the fairness and reasonableness of a settlement agreement is presumed "where that

4  agreement was the product of non-collusive, arms' length negotiations conducted by capable and

5  experienced counsel." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379-EJD, 2013 U.S. Dist. LEXIS

6  37286, at *11 (N.D. Cal. Mar. 18, 2013). This Settlement is the product of arms'-length negotiations

7  Conducted over the course of many discussions. This non- collusive Settlement is entitled to "a

8  presumption of fairness." *Gribble v. Cool Transps., Inc.*, 2008 U.S. Dist. LEXIS 115560, at *26 (C.D.

9  Cal. 2008).

10       In addition, the Court may consider some or all of the following factors in evaluating the

11  reasonableness of a settlement: the extent of discovery completed and the stage of proceedings; the

12  strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation;

13  the risk of maintaining class action status throughout trial; the amount offered in settlement; and the

14  experience and views of counsel. *See Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

15  "Under certain circumstances, one factor alone may prove determinative in finding sufficient grounds

16  for court approval." *Nat'l Rural Telecom. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-526 (C.D. Cal.

17  2004) (citing *Torrisi v. Tuscson Elec.*, 8 F.3d 1370, 1376 (9th Cir. 1993)).

18         **2.**     **The Settlement Is Reasonable in Light of the Strengths and Weaknesses of**

19           **Plaintiff's Case**

20       "An important consideration in judging the reasonableness of a settlement is the strength of the

21  plaintiffs' case on the merits balanced against the amount offered in the settlement." *Nat'l Rural*

22  *Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004).  In assessing

23  the strength of the plaintiff's case and the probability for success, "the district court's determination is

24  nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Officers*

25  *for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotation omitted).  There

26  is "no single formula" to be applied, but the court may presume that the parties' counsel and the

27  mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery.

28  *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

1    As to the wage and hour claims, the claims are that Defendant failed to provide meal and rest

2  periods, failed to pay for all time worked, failure to properly calculate the regular rate of pay and failed

3  to reimburse. While courts have often certified wage and hour claims of the kind involved in this case,

4  other courts have denied certification of such claims. *E.g., In re Taco Bell Wage & Hour Action*, 2012

5  WL 5932833 *10 (N.D. Cal. 2012) (denying certification of meal break claims due to the fact that

6  individualized inquiry into each instance of alleged unpaid premium wages or the nature of the work

7  performed was required to establish liability).  It is not at all certain how any court, including this Court,

8  would decide upon the specific facts in this action relating to class requirements under FRCP 23, and

9  Plaintiff is unwilling to roll the dice on class certification when a reasonable vindication of the rights of

10  the Class has presented itself in the form of this Settlement.  Further, Defendant might have been able to

11  convince the Court or a jury that it provided class members with meal and rest breaks but that some

12  class members chose not to take them.  This would be problematic since establishing the extent, or even

13  the very existence, of liability would be compromised if Defendant were to present testimony from its

14  current employees, who have every reason to testify in their employer's favor, corroborating this

15  allegation.  *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal.4th 1004, 1040-1041 (2012) ("Bona fide relief

16  from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved

17  employee during a meal break does not thereby place the employer in violation of its obligations and

18  create liability for premium pay").  Finally, there is also a risk that the jury would fail to reach a

19  unanimous verdict, or that a favorable verdict would be overturned on appeal.

20    As to the FCRA claims, Plaintiff alleges that Defendant used disclosure forms which contained

21  extraneous information. Plaintiff contends that this facially violates the FCRA, which provides, in

22  relevant part:

23    Except as provided in subparagraph (B), a person may not procure a consumer report, or
cause a consumer report to be procured, for employment purposes with respect to any

24  consumer, unless—(i) ***a clear and conspicuous disclosure has been made in writing*** to
the consumer at any time before the report is procured or caused to be procured, ***in a***

25  ***document that consists solely of the disclosure***, that a consumer report may be obtained
for employment purposes; and (ii) that consumer has authorized in writing (which

26  authorization may be made on the document referred to in clause (i)) the procurement of
the report by that person.

27

28  15 U.S.C. §1681b(b)(2)(A)(i) (emphasis added).

*Hubbard v. Henkel Corporation*                         Amended Notice of Motion and Motion for
                                                         Preliminary Approval of Class Action Settlement

1    However, the analysis does not end there.  Plaintiff must also prove that the violation was

2  "willful" under 15 U.S.C. § 1681n(a).  In *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-59 (2007), the

3  United States Supreme Court explained that "willful" applies not only to "knowingly" violating the

4  FCRA, but to actions that constitute a "reckless disregard of statutory duty." *See also Willes v State*

5  *Farm Fire & Cas. Co*., 512 F.3d 565, 566 (9th Cir. 2008) (applying the "reckless disregard" standard).

6  Although *Safeco* clarified that a plaintiff need not establish that defendant "knowingly and

7  intentionally" committed the violations, the Court left room for defendants to claim "reasonable

8  construction" or even "careless construction" of the Act as a defense. *See, e.g*., *Shlahtichman v 1-800*

9  *Contacts, Inc.*, 615 F.3d 794 (7th Cir. 2010) (holding that a defendant was not liable for statutory

10  damages because the violation arose from a "reasonable construction" that the truncation requirement of

11  § 1681c(g) was inapplicable to email receipts); *Long v Tommy Hilfiger U.S.A*., 671 F.3d 371(3d Cir.

12  2012) (holding that defendant were not liable under the FCRA because their practice was merely a

13  "careless interpretation" of the law and is not a "willful" violation).

14    The Ninth Circuit's decision in *Syed* held that: "in light of the clear statutory language that the

15  disclosure document must consist solely of the disclosure, a prospective employer's violation of the

16  FCRA is willful when the employer includes terms in addition to the disclosure." *Syed v. M-I LLC*, 852

17  F.3d 492, 496 (9th Cir. March 20, 2017.)

18    Here, Defendant could argue that the state law disclosures are closely related enough to the

19  purpose of the disclosure that they should be regarded as not violating the FCRA.  However, this is not a

20  strong argument, given the preclusion of extraneous or irrelevant information in FCRA disclosure forms

21  under *Syed*.  *Gilberg v. California Check Cashing Stores, LLC,* 913 F.3d 1169, 1175 (9th Cir. 2019).

22  More likely, Defendant would argue that any violation should not be deemed willful. The availability of

23  these defenses to Defendant, coupled with Plaintiff's burden to show that Defendant engaged in

24  "reckless disregard of statutory duty," could make it challenging for Plaintiff to prove ultimate liability.

25  *See In re Toys 'R' Us-Del., Inc. FACTA Litig*., 295 F.R.D. 438, 451 (C.D. Cal. 2014) (finding that the

26  "strength of plaintiff's case" factor "weighs in favor of settlement" where "willfulness" under FCRA is

27  a triable issue); *see also Torres v. Pet Extreme*, No. 13-01778-LJO, 2015 U.S. Dist. LEXIS 5136, *13

28  (E.D. Cal. Jan. 15, 2015) (Findings & Rec. of Mag. Judge) ("Given the uncertainty of litigating this

1   issue of willfulness[under 15 U.S.C. §1681n]…[this] weighs in favor of settlement").  Even assuming

2   liability, the level of willfulness and the amount of damages sustained by the class members warrant a

3   penalty from $100 up to $1,000.  15 U.S.C. § 1681n(a)(1)(A).  Here, where Plaintiff has alleged a

4   procedural violation, the minimum award is likely *assuming Plaintiff prevails at trial*.  This would yield

5   only a modest additional recovery of about $25 per class member since the current gross recovery per

6   FCRA Class Member is currently $74.98.  It is unlikely that bringing the FCRA claim to trial will yield

7   sufficient additional benefit to the FCRA Class to warrant the uncertainty, expense, time, and effort that

8   would be placed on the Parties and the Court first in determining certification, then later at trial.

9        Indeed, a district court has granted summary judgment as to similar claims brought by another

10  plaintiff. *See Lewis v. Southwest Airlines,* 2018 WL 400775 *4 (N.D. Tex. 2018.). As some courts have

11  categorically rejected the theory of liability advanced here, Plaintiff faces substantial risk of a complete

12  loss in this case.

13       Some courts have refused to grant class certification for cases seeking statutory penalties on the

14  grounds that liability "would be enormous and completely out of proportion to any harm suffered by the

15  plaintiff." *Serna v. Big A Drug Stores, Inc*., No. 07-0276 CJC, 2007 U.S. Dist. LEXIS 82023, *10 (C.D.

16  Cal. Oct. 9, 2007) (quoting *London v. Wal-Mart Stores, Inc*., 340 F.3d 1246, 1255 n.5 (11th Cir. 2003)).

17  Indeed, if Defendant argues, and the Court finds, that no harm has been suffered by Plaintiff or the

18  FCRA Class, then the $100 minimum penalty could be found by the Court to be excessive, especially

19  when multiplied by the number of FCRA Class Members.  This seems to be the case as many courts

20  have affirmed settlements for FCRA claims equating to far less than $100 per class member.  *See*

21  *Aceves v. Autozone Inc.,* No. 5:14-cv-2032, ECF No. 41 (C.D. Cal. Mar. 25, 2016) (preliminary

22  approval motion pending in settlement with gross recovery of $20 per class member in the disclosure

23  class); *Landrum v. Acadian Ambulance Serv., Inc.,* No. 14-cv-1467, ECF No. 37 (S.D. Tex. Nov. 5,

24  2015) (approving disclosure settlement of $10 per person); *Walker v. McClane/Midwest, Inc*., No. 2:14-

25  CV-04315, ECF No. 26 (W.D. Mo. July 20, 2015) (granting preliminary approval of settlement in

26  which disclosure class members will recover $24); *Esomonu v. Omnicare,* 2018 WL 3995854 (N.D.

27  Cal. 2018) (net settlement amount of $16.50 per class member); *Schofield v. Delta Airlines*, 2019 WL

28  955288 (N.D. Cal. 2019) (gross settlement amount of $52 per person); *In re Uber FCRA Litigation*

*Hubbard v. Henkel Corporation*                    Amended Notice of Motion and Motion for
                                                  Preliminary Approval of Class Action Settlement

2017 WL 2806698 **1-2 (N.D. Cal. 2017) (approved a settlement of $7.5 million with 1,025,954 class members, or $7.31 gross recovery per class member). While the Ninth Circuit clarified that such matters are properly considered at the merits stage, the court also observed that the district court may have the power to reduce the amount in penalties as "constitutionally excessive" even if the plaintiff were to prevail. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010). Accordingly, Plaintiff is not willing to jeopardize the $74.98 per FCRA Class Member gross recovery guaranteed by the Settlement.

In light of the challenges Plaintiff faces moving forward, the proposed Settlement represents a fair and adequate resolution of these claims.

### 3.    The Risk, Expense and Complexity of the Case, Including the Risk of Decertification, Favor Approval of the Settlement

Notwithstanding the raw monetary amount of the potential exposure, Plaintiff and Class Counsel are cognizant of the risks that continued litigation would entail that consequently make the Wage and Hour Settlement amount of $1,635,550 a fair, adequate and reasonable compromise of the disputed claims at issue. (Setareh Decl., ¶¶ 25, 42-44.)

First, there is the risk that a court would find that, as a matter of law, Defendant's policies were lawful under the Labor Code and the Wage Orders. As discussed above, "[b]ona fide relief from duty and the relinquishing of control satisfies the employer's obligations, and work by a relieved employee during a meal break does not thereby place the employer in violation of its obligations and create liability for premium pay." *Brinker*, 53 Cal.4th at 1040-1041 (2012). This would eliminate all meal and rest break claims if found to be the case, extinguishing the possibility of any damages based thereupon. Second, there is the risk that Defendant could show that, despite allegedly flawed written policies, it, in practice, provided meal and rest periods in accordance with the law and paid employees for all time worked. Again, if Defendant could produce current employees to testify to this effect, it could similarly decrease or eliminate the damages recoverable for those claims, even in the face of noncompliant policies stated in their employee handbooks and policy documents.

Even if Plaintiff succeeds on the merits, there is risk with regard to class certification, including whether, for example, individualized inquiries predominate depending on employee location, job

1    position, or other factors.  *See, e.g., In re Taco Bell Wage & Hour Action*, 2012 WL 5932833 at \*10

2    (denying certification because individualized inquiry into each instance of alleged violation required to

3    establish liability).  There is also the risk that if Plaintiff were to prevail at trial, Plaintiff and the classes

4    would not be able to collect on any judgment received at trial.  As time passes, litigation costs mount,

5    and external circumstances beyond the Parties' control, such as a worldwide pandemic, can negatively

6    impact a business, such as Defendant, financially.  Certification and trial would be months, if not a year

7    away, and there is no telling whether Defendant would be in a financial position after trial to pay a

8    judgment greater than the current Settlement provides, or even the same amount.

9         Defendant has also asserted that they would succeed on good faith defenses regarding the

10    penalties sought in this case.  Lab. Code §§ 203 and 226(e) both require proof of "willful" or "knowing

11    and intentional" Labor Code violations for liability to be imposed. Thus, the existence of a good faith

12    dispute that could preclude any recovery of wages (even if the plaintiff ultimately prevails) can preclude

13    these penalties from being awarded. *See Choate v. Celite Corp.,* 215 Cal.App.4th 1460 (2013)

14    (reversing award of waiting time penalties based on employer's good faith defense notwithstanding that

15    the plaintiffs prevailed on the underlying wage claims).)

16         Thus, there are risks that Plaintiff and the Wage and Hour Settlement Class might not prevail on

17    the merits of the claims, or that class certification might not be granted. Establishing the aggregate

18    amount of damages for unpaid rest periods would require a survey and expert testimony. It might be that

19    even if a class were certified that the record at a trial would lead to a motion for decertification or that a

20    trier of fact would conclude that the claims were not proven. *E.g*,  *Duran v. US Bank Nat'l Ass'n*, 59

21    Cal. 4th 1, 39 & fn. 33 (2014) ("*Duran*"), citing *Dilts v. Penske Logistics, LLC*  2014 WL 205039 (S.D.

22    Cal. 2014) (dismissing certified claims regarding off-the-clock work during meal breaks based on proof

23    at trial).  There is also risk that individual differences between Settlement Class Members could be

24    construed as pertaining to liability, and not solely to damages, *see*, *Duran*, 59 Cal.4th at 19.  Any of

25    these has the potential to significantly reduce or eliminate whole categories of damages far below what

26    is provided in the Settlement.

27         As to the FCRA cause of action, substantial litigation on the FCRA is a recent development, and

28    litigants face a greater chance of changes in case law or statutory enactments that will eliminate liability.

1    And even if Plaintiff were to succeed in certifying the class, the "risk that a class action may be

2    decertified at any time generally weighs in favor of settlement." *Lane v. Facebook, Inc*., No. 08-3845-

3    RS, 2010 U.S. Dist. LEXIS 24762, *4 (N.D. Cal. Mar. 17, 2010) (citing *Rodriguez v. West Publishing*

4    *Corp*., 563 F.3d 948, 966 (9th Cir. 2009)).

5          Plaintiff believes that in light of the Ninth Circuit's *Syed* decision, it is likely that Plaintiff would

6    prevail on motion for summary judgment on the matter of willfulness. But Plaintiff's interpretation of

7    *Syed* is relatively untested in district courts, and there is no guarantee it would prevail. It certainly did

8    not prevail in *Lewis, supra,* at *4.

9          Ultimately, in considering the risks of litigation, "a court may consider the vagaries of litigation

10   of immediate recovery by way of compromise to the mere possibility of relief, after protracted and

11   expensive litigation." *Vasquez v. Coast Valley Roofing, Inc*., 266 F.R.D. 482, 489 (E.D. Cal. 2010)

12   (internal quotations omitted). Here, the Settlement delivers immediate recovery for all Settlement Class

13   Members and avoids the risks and expenses of protracted litigation, including potential interlocutory

14   appeals and an appeal after a trial. This factor supports approving the Settlement. *See In re Portal*

15   *Software Inc. Sec. Litig.,* No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 88886, *3 (N.D. Cal. Nov. 26,

16   2007) (recognizing that the inherent risks of proceeding to… trial and appeal also support the

17   settlement).

18         In light of these risks, as well as the hazards and expenses of carrying the case through trial,

19   Plaintiff's counsel is of the opinion that the Settlement represents an excellent bargain for the class.

20   (*See, Rodriguez v. West Publ. Corp.* (C.D. Cal. 2007) 2007 WL 2827379 at *9 (explaining that "the trial

21   court is entitled to, and should, rely upon the judgment of experienced counsel for the parties") (aff'd in

22   relevant part at 563 F.3d 948 (9th Cir. 2009).)  At this juncture, the Settlement would entitle each

23   Settlement Class Member to a significant recovery. In contrast, if the case would continue in litigation,

24   even if Plaintiff prevailed on a class certification motion, any appeal by Defendant would prolong

25   already protracted litigation and delay remedies to the Class.

26         To review, although Plaintiff is confident that she would have prevailed had litigation continued

27   through class certification and ultimately trial, considerable risks, delays and uncertainties nevertheless

28   exist with continued litigation. The Parties have achieved a fair Settlement that reflects a meaningful

*Hubbard v. Henkel Corporation*                              Amended Notice of Motion and Motion for
                                                             Preliminary Approval of Class Action Settlement

1  recovery on behalf of Settlement Class Members and that merits the Court's preliminary approval.

2  **4.     The Amount Offered in Settlement Supports Approval**

3  The total Settlement Amount is $2,125,000, plus any employer-side payroll taxes. The Ninth

4  Circuit has held that the reasonableness of a settlement should be evaluated in relation to the potential

5  compensatory damages, not including any penalties that might be awarded. *Rodriguez v. West*

6  *Publishing Corp.,* 563 F.3d 948, 964 (9th Cir. 2009); *see also Miller v. CEVA Logistics USA Inc.*, 2015

7  WL 729638, *7 (N.D. Cal. 2015) (accepting settlement valuation based on damages exclusive of

8  interest and penalties). This principle is of course more applicable to the wage and hour claims than it is

9  to the FCRA claims where the principal relief is statutory penalties.

10  **a.     The Amount Offered in Settlement Supports Approval of the Wage**

11  **and Hour Settlement Class**

12  As to the wage and hour claims, Plaintiff's counsel estimates that the total maximum potential

13  recovery in this case is $204,546.13 for meal break period premiums, $1,792,533.48 for rest break

14  period premiums, $975,750 for unreimbursed business expenses, $512,349.90 for off the clock work

15  due to texts from supervisors, $1,626,276.22 for off the clock work due to security checks and time

16  spent clocking in and $483,815.86 for failure to properly calculate the regular rate of pay. (Setareh Decl.

17  ¶¶ 29-36.)[5]  Below is a chart detailing Plaintiff's estimated potential recovery in this matter based upon

18  information available at the time of mediation:

19  ///

20  ///

21  ///

22

23  _____

24  [5] This does not include the penalty amount for the non-PAGA wage claims because courts evaluate the strength of a proposed settlement without taking potential penalties or interest into

25  consideration.  (*See Rodriguez v. West Publishing Corp.* (9th Cir. 2000) 563 F.3d 948, 955; *see also Miller v. CEVA Logistics U.S.A., Inc.* (E.D. Cal. Feb. 19, 2015) 2015 WL 729638, at *7(court utilized

26  calculation of a defendant's exposure exclusive of interest and penalties to determine whether the settlement fell within the range of possible approval).) However, the fairness of the PAGA settlement

27  is discussed in this brief at section III(A)4(a)(i) "Fairness of the PAGA Award" *infra.*

28

*Hubbard v. Henkel Corporation*                    Amended Notice of Motion and Motion for
                                                   Preliminary Approval of Class Action Settlement

| Plaintiff's Estimated Potential Recovery | | |
|---|---|---|
| **Assumptions (based on mediation data)**<br>Class Count:  568 | | *All numbers stated in calculations below taken from data produced by Defendant in advance of mediation.* |
| **Cause of Action** | **Estimated Potential Recovery** | **Calculations for Estimated Potential Recovery** |
| Off-the-Clock Work (Security Check) | $1,626,276.22 | 359,753 shifts from 8/29/15 to 4/30/20 x estimated 7.5 minutes off-the-clock security check per shift x $36.16 avg OT rate |
| Off-the-Clock Work (Texts with Supervisors) | $512,349.90 | 85,003.7 workweeks from 8/29/15 to 4/30/20 x estimated 10 minutes off-the-clock time texting w/ supervisors per week x $36.16 avg OT rate |
| Meal Period Premiums | $204,546.13 | 8,658 shifts from 8/29/15 to 7/1/16[6] showing a potential MB violation in timekeeping data x $23.63 avg hourly rate |
| Rest Period Premiums | $1,792,533.48 | 358,568 shifts where rest breaks required from 8/29/15 to 4/30/20 x $25.00 avg hourly rate x assumed 20% RB violation rate |
| Reimbursement for Cell Phones | $975,750.00 | 19,515 months worked from 8/29/15 to 4/30/20 x $50 estimated monthly cell phone plan per Class Member |
| Regular Rate of Pay | $483,815.86 | $229.97 average unpaid premium amount per Full-Time Equivalent ("FTE") x 350.6 average number of FTEs per year in Class Period x 6 years |
| **TOTAL** | **$5,595,271.59** | |

(*Id.*, ¶ 36.) Consequently, the settlement of Wage and Hour settlement amount of $1,635,550 represents about 29.23% of the value of the unpaid meal and rest premium wages, off the clock work, unreimbursed expenses and failure to properly calculate the regular rate of pay at issue in this case, assuming these amounts could be proven at trial. Given the amount of the settlement as compared to the

---

[6] During this time period, Plaintiff believes she has grounds to argue that Defendant had a noncompliant meal break policy; thus, Plaintiff would intend to argue that any violations here would be presumptively valid.  (Setareh Decl., ¶ 33.)

1   potential value of the claims in this case, the settlement is fair and reasonable. Clearly, the goals of this

2   litigation have been met. (*Id.*, ¶ 35.) This is well within the range of wage and hour settlements

3   approved by courts. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)

4   (approving a settlement amount that was approximately 16% of the plaintiffs' estimated potential

5   recovery and finding that percentage "fair and adequate" given the difficulties in proving the case); *In re*

6   *Omnivision Techs., Inc.*, 559 F. Supp.2d 1036, 1042 (N.D. Cal. 2008) (Conti, J.) (approving as

7   "reasonable" a settlement amount that was just over 9% of the plaintiffs' estimated potential recovery

8   based on the plaintiffs' risk of "getting nothing"). *See e.g., Stovall-Gusman v. W.W. Granger, Inc.*,

9   2015 U.S. Dist. LEXIS 78671, *12-13 (N.D. Cal. N.D. Cal. 2015) (7.3% of the "estimated trial

10  award"); *In re Toys R Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295

11  F.R.D. 438, 453-54 (C.D. Cal. 2014) (3%); *In re LDK Solar Secs. Litig.*, 2010 U.S. Dist. LEXIS 87168,

12  *6 (N.D. Cal. 2010) (5% of "plaintiff's expert estimated damages"). Of course, it should not be

13  surprising that a settlement yields less than what the class could theoretically have recovered at trial.

14  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ["the very essence of a

15  settlement is compromise, a yielding of absolutes and an abandoning of highest hopes"].

16      As courts in the Ninth Circuit have observed, "simply because a settlement may amount to only

17  a fraction of the potential recovery does not in itself render it unfair or inadequate.  Compromise is the

18  very nature of settlement."  *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979).

19                  **b.      Fairness of the PAGA Award**

20      The allocation for PAGA claims is fair and reasonable. The Settlement allocates $75,000 to

21  settle the Private Attorney General Act (PAGA) Labor Code section 2699 claim, of which 75% (i.e.

22  56,250.00) goes to the State of California and 25% (i.e. 18,750.00) is paid back into the Net Settlement

23  Fund. (Settlement Agreement § 1.3.5.) Although the estimated maximum PAGA penalties in this case

24  are $6,952,952, PAGA penalties are admittedly discretionary and the Court could choose to award a

25  very low amount in PAGA penalties or no amount at all.  (*See* Lab. Code § 2699(e)(2).)  Defendant

26  would argue that it is unfairly duplicative to award both Labor Code § 203 penalties and PAGA

27  penalties. (Setareh Decl. ¶ 37.) Courts have approved PAGA awards that are about .2 percent of the

28  potential PAGA recovery. See *Ruch v. AM Retail Grp., Inc.*, No. 14-CV-05352-MEJ, 2016 WL

1  5462451, at *2, 7 (N.D. Cal. Sept. 28, 2016). A number of factors support an award of a PAGA

2  penalties of less than 1% the estimated maximum PAGA penalty.

3        First, Plaintiff intends to provide the LWDA notice through LWDA's online submission portal.

4  If the LWDA does not object to the settlement, that supports the settlement allocation.

5  Second, "a court may award a lesser amount than the maximum civil penalty amount specified by this

6  part if, based on the facts and circumstances of the particular case, to do otherwise would result in an

7  award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2).)  Here, a

8  court might very well award a reduction in PAGA penalties as a penalty award of $6,952,952 would be

9  tantamount to over $15,000 in penalties per aggrieved employee. (The data shows that there are 454

10  employees falling within the PAGA time period.) Accordingly, even if Plaintiff were to establish some

11  underlying violation of the Labor Code, Defendant contends that a court would not assess the full

12  amount of penalties against Defendant, especially in light of Defendant's good faith defenses to

13  Plaintiff's claims.

14        Third, some Courts have found that a relatively lower PAGA settlement is permissible where

15  the Rule 23 settlement is "relatively substantial" based on the circumstances of the case. *Viceral v.*

16  *Mistras Group, Inc*., No. 15-cv-02198-EMC, 2016 WL 5907869, at *9 (approving a .15% recovery).

17  Here, the settlement of the underlying wage and hour claims is robust and that serves the deterrent

18  purpose of the PAGA statue.  *O'Connor v. Uber Techs, Inc*., 201 F. Supp. 3d 1135 (N.D. Cal. 2016).

19  For the Wage and Hour Settlement Class the gross settlement payment will be $2,879.47 per class

20  member ($1,635,550/568)(although of course this will be adjusted based on workweeks). Plaintiff has

21  obtained a significant monetary recovery for class members.

22        The amount allocated to PAGA is fair. The allocation took into account whether Plaintiff would

23  have had to clear other hurdles such as proving that the PAGA claim itself is manageable enough to be

24  tried on a representative basis. *See also Amey v. Cinemark USA Inc.*, 2015 WL 2251504, * 16 (N.D.

25  Cal. May 13, 2015) (noting "concerns about manageability related to the numerous 'aggrieved

26  employees' that plaintiff sought to represent."). Plaintiff would also have had to successfully argue (and

27  defend on appeal) Defendant's argument that PAGA penalties arising from claims that also provide for

28  damages do not constitute an impermissible double recovery. *See Yadira v. Fernandez*, 2011 WL

1    4101266, *3 (N.D. Cal. Sept. 8, 2011) (recognizing that "'[w]here state law provides for statutory

2    damages, the trial court's discretion may be called upon to prevent double recovery'") (quoting *Doe v.*

3    *D.M. Camp & Sons,* 624 F. Supp. 2d 1153, 1174 (E.D. Cal. 2008)). In addition, Plaintiff would face the

4    extremely likely risk that the PAGA penalties would be greatly reduced by this Court (or the Ninth

5    Circuit, on appeal). Courts are required to reduce PAGA penalties when the prescribed award would be

6    "unjust, arbitrary and oppressive, or confiscatory." *See* Lab. Code § 2699(e)(2); *see also Fleming v.*

7    *Covidien Inc.*, 2011 WL 7563047, at *3-4 (C.D. Cal. Aug. 12, 2011) (invoking § 2699(e)(2) and

8    reducing PAGA penalty award from $2.8 million to $500,000); *Makabi v. Gedalia,* 2016 WL 815937,

9    at *2 & n.3 (Cal. Ct. App. Mar. 2, 2016) (unpublished) (noting that the trial court invoked § 2699(e)(2)

10    and declined to apply any PAGA penalties, despite finding that defendants violated PAGA).

11            **c.**      **The Amount Offered in Settlement Supports Approval of the FCRA**

12                 **Settlement Class**

13        The FCRA's damages provision limits recovery to between $100 and $1,000 or actual damages,

14    whichever is greater. With approximately 6,526 FCRA Settlement Class Members, the FCRA statutory

15    damages are between $652,600 to $6,526,000. A low-end statutory damages award is much more likely

16    than a high end one. A recent jury verdict from the Northern District in an FCRA case illustrates the

17    type of case where a jury would predictably award close to the $1,000 per violation penalty. *Ramirez v.*

18    *Trans Union LLC*, 2017 WL 5153280 (N.D. Cal. 2017) (Order denying Motion for New Trial).

19    *Ramirez supra* at *1 involved an award of over $60 million in punitive and statutory damages in a case

20    alleging violation of 15 U.S.C. 1681e(b) which requires credit reporting agencies to use "reasonable

21    procedures to ensure "maximum possible accuracy" of the information they provide. The defendant

22    Trans Union mistakenly identified the class members as being Specially Designated Nationals on the

23    federal government's list of "terrorists, drug traffickers and others with whom Americans are prohibited

24    from doing business." *Id.* In addition to punitive damages the jury awarded statutory damages of

25    $984.22 per class member. *Id.* at *5. While Plaintiff strongly believes that Defendant did not comply

26    with the law, and that it was willful under *Syed,* the conduct at issue here is not comparable to the

27

28

*Hubbard v. Henkel Corporation*                        Amended Notice of Motion and Motion for
                                                     Preliminary Approval of Class Action Settlement

1   egregious conduct at issue in *Ramirez*.[7]

2   A recent decision from the Northern District evaluating whether to approve the settlement in a

3   similar stand-alone disclosure case used the $100 per violation penalty as the comparator to judge the

4   fairness of the settlement. *Lagos v. Leland Stanford Junior University*, 2017 WL 1113302 *4 (N.D. Cal.

5   2017). The decision of the Ninth Circuit in *Rodriguez v. West Publishing*, 563 F.3d 948, 964 (2009) is

6   instructive. In that case, the objectors to an antitrust class action settlement argued that the district court

7   erred by not comparing the settlement amount to the treble damages available in antitrust cases. The

8   Ninth Circuit disagreed explaining that: "It is our impression that courts generally determine fairness of

9   an antitrust class action settlement based on how it compensates the class for past injuries, without

10  giving much, if any consideration to treble damages." The Ninth Circuit went on to say that a court in

11  an antitrust case has discretion whether to measure the settlement against potential treble damages or

12  not and concluded: "In this case, the negotiated amount is fair and reasonable no matter how you slice

13  it. . . . Even considering the trebling effect, the settlement amount represents approximately ten percent

14  of the class's estimate of its own trebled damages. . . . The $49 million is in cash, not kind, which is a

15  good indicator of a beneficial settlement." *Id.* at 965.

16  Here, the FCRA Settlement amount of $489,450 is 75% of the $652,600 FCRA damages

17  amount assuming a $100 statutory penalty per violation.

18  For the FCRA Settlement Class the gross settlement payment will be $74.98 per class member

19  ($489,450/6,527).  This compares favorably with other FCRA settlements in similar stand-alone

20  disclosure cases. *See, e.g., Rohm v. Thumbtack, Inc.,* 2017 WL 4642409 (N.D. Cal. 2017)(granting final

21  approval; claims made settlement (albeit a non-reversionary one) where 66,676 class members shared in

22  a $225,000 settlement--$3.30 gross and approximately $41.39 net per class member); *In re Uber FCRA*

23  *Litigation,* 2017 WL 2806698 (N.D. Cal. 2017) (granting preliminary approval; claims made settlement

---

[7] While *Ramirez* is a very different type of FCRA case from this case, it illustrates the risks of proceeding with FCRA cases. The U.S. Supreme Court has granted review in that case on the defendant's argument that the class was improperly certified because the defendant contends that it contains some class members who have Article III standing and others who do not. *Ramirez v. Transunion,* U.S. Supreme Court Case No. 20-297.

*Hubbard v. Henkel Corporation*                Amended Notice of Motion and Motion for
                                               Preliminary Approval of Class Action Settlement

1    (also non-reversionary) where 1,025,954 class members shared in a $7.5 million settlement or $7.31

2    gross per class member); *Aceves v. AutoZone*, Case No. 5:14-CV-02032 (C.D. Cal. 2016) (granting

3    final approval; 206,650 class members shared in a $5,700,000 settlement--$27.58 gross and

4    approximately $20 net per class member); *Esomonu v. Omnicare* (N.D. Cal. 2018)(granting final

5    approval) involved a claims made settlement (albeit a non-reversionary one) where 43,069 class

6    members shared in a $1,300,000 settlement or a gross recovery of $30.18 per class member.

7        Of course, it should not be surprising that a settlement yields less than what the class could

8    theoretically have recovered at trial. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.

9    1998) ("the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of

10   highest hopes").  Importantly, the reasonableness of a settlement is not dependent upon the amount

11   approaching the potential recovery plaintiffs might receive if successful at trial. *See Nat'l. Rural Tele.*

12   *Coop.*, 221 F.R.D. at 527.  Indeed, compromise is the very nature of settlement. *See Boyd v. Bechtel*

13   *Corp.*, 485 F. Supp. 610, 624 (N.D. Cal. 1979).  Moreover, courts recognize that there is an inherent

14   "range of reasonableness" in determining whether to approve a proposed settlement, a range which

15   recognizes the uncertainties of law and fact and attendant risks and costs associated with taking any

16   litigation to completion. *See Frank v. Eastman Kodak Co.*, 288 F.R.D. 174, 186 (W.D.N.Y. 2005).

17                    i.        **The Release of State Claims Under the ICRAA and CCRA is**

18                              **Warranted**

19       The Court's February 25, 2021 Order Denying Preliminary Approval found the release of

20   claims under the California Investigative Consumer Reporting Agencies Act ("ICRAA") and Consumer

21   Credit Reporting Agencies Act ("CCRA"), not pled in this Action, to be overbroad as no discussion was

22   made regarding their connection to the specific allegations of the operative complaint nor regarding the

23   value of such claims.  These are discussed here.

24       Potential claims under the ICRAA and the CCRA, covered by the Released Claims for the

25   FCRA Class, are closely related to, and cover the same subject matter as, Plaintiff's claim under the

26   FCRA relating to Defendant's background check forms.  However, they would not contribute much in

27   aggregate value on a class-wide basis and would have been difficult to prove if they had been pled.

28       Both the ICRAA and CCRAA allow for actual damages. Cal. Civ. Code §§ 1786.50(a)(1);

*Hubbard v. Henkel Corporation*                    Amended Notice of Motion and Motion for
                                                   Preliminary Approval of Class Action Settlement

1785.31(a)(1). However, Plaintiff claim is based on an allegation that the disclosure forms used improperly included extraneous language, and as such, Plaintiff and settlement class members did not incur any actual damages. To assert actual damages, a plaintiff would presumably have to allege and later prove not only that s/he did not understand that a background check would be done, but also that if s/he had known that a background check would be done, s/he would not have authorized it. This is unlikely as a job applicant is not going to refuse a background check if such assent is necessary to get a job. Even then, there would be no economic damages. A job applicant who refused the background check would not get the job; therefore, there could be no argument of economic injury even if the disclosure was legally inadequate. Furthermore, actual damages require proof of causation. Cal. Civ. Code § 1786.50 ("actual damages sustained by the consumer *as a result of the failure*" can be recovered) (emphasis added).

Even if class members suffered actual damages, Defendant would vigorously dispute that such a class could be certified due to asserted individualized issues inherent in determining who was damaged, including proof of causation. Defendant would also assert that it would be extremely difficult if not impossible to estimate the aggregate number of actual damages suffered by class members, as such damages would require individual proof, including proof of causation. Plaintiff herself was hired, which created challenges in her representing any class members who may claim to have suffered actual damages.  Furthermore, in addition to actual damages, statutory damages would be available under the ICRAA. However, the plain language of the ICRAA makes clear that statutory damages are not available in a class action. Cal. Civ. Code § 1786.50(a).

Finally, based on the text of the ICRAA statute, Defendant would assert that class members can elect to recover under the FCRA *or* ICRAA, but not under both. Cal. Civ. Code §1786.52(b).  For all these reasons, courts have noted in the context of reviewing proposed class action settlements in similar cases that the potential recovery on state law background check claims is "quite limited" action cases. *See, e.g., In re Uber FCRA Litigation*, No. 14-CV-05200-EMC, 2017 WL 2806698, at *5 (N.D. Cal. June 29, 2017) (granting preliminary approval).  It should be noted that Class members who would prefer to seek individual statutory or actual damages on these claims rather than the payout in the class settlement have the opportunity to opt out of the Settlement.

1    Considering the above facts and caselaw, Plaintiff respectfully restates her request that the Court

2    grant preliminary approval of the proposed settlement as fair and adequate, when viewed on the whole

3    and in light of all the significant risks that further litigation would present.

4            **5.**    **The Settlement Was Finalized After a Thorough Investigation**

5          Courts may also consider the extent of discovery and the current stage of the litigation to

6    evaluate whether parties have sufficient information to make an informed decision to settle the action.

7    *See Linney v. Cellular Alaska Partnership,* (9th Cir. 1998), 151 F.3d at 1239. A settlement negotiated at

8    an earlier stage in litigation will not be denied so long as sufficient investigation has been conducted.

9    *See Eisen v. Porsche Cars North American, Inc.*, Case No. 11- 09405, 2014 U.S. Dist. LEXIS 14301,

10   2014 WL 439006, at *13 (C.D. Cal. Jan. 30, 2014) (finding that counsel had "ample information and

11   opportunity to assess the strengths and weaknesses of their claims" despite "discovery [being] limited

12   because the parties decided to pursue settlement discussions early on.").

13         Plaintiff engaged in extensive investigation and discovery, including reviewing documents and

14   data. (*See* Setareh Decl. ¶ 7.) Based on this discovery and on their independent investigation and

15   evaluation, Plaintiff's counsel is of the opinion that this Settlement for the consideration and on the

16   terms set forth in the Settlement Agreement is fair, reasonable, and adequate, and is in the best interest

17   of the Settlement Class in light of all known facts and circumstances, including the risk of significant

18   delay and uncertainty associated with litigation of this type, as well as the various defenses asserted by

19   Defendant.

20           **6.**    **The Views of Experienced Counsel Should Be Accorded Substantial Weight**

21         The fact that sophisticated parties with experienced counsel have agreed to settle their dispute

22   should be given considerable weight by courts, since "parties represented by competent counsel are

23   better positioned than courts to produce a settlement that fairly reflects each party's expected outcome

24   in the litigation." *In re Pac. Enters. Sec. Litig*., 47 F.3d 373, 378 (9th Cir. 1995).

25         Here, the parties achieved a settlement after a thorough review of relevant documents and

26   information, as well as an analysis of the parties' claims and defenses.  The expectations of all parties

27   are embodied by the Settlement, which, as set forth above, is non-collusive, being the product of arms'-

28   length negotiations. Plaintiff was represented by experienced class action counsel possessing significant

1    experience in class action matters including wage and hour and FCRA litigation. (*See* Setareh Decl. ¶¶

2    18-22.) Likewise, Defendant's counsel, Seyfarth Shaw LLP is a national, well-regarded defense firm

3    experienced in employment litigation. Thus, the parties' recommendation to approve this Settlement

4    should "be given great weight." *Eisen v. Porsche*, 2014 WL 439006, at *5 (crediting the experience and

5    views of counsel in approving a settlement resolving automotive defect allegations).

6           Based on the satisfaction of the *Churchill* factors, the Court should find the proposed Settlement

7    to be fair and adequate.

8         **B.**     **Conditional Class Certification Is Appropriate for Settlement Purposes**

9              **1.**     **The Proposed Class Meets the Requirements of Rule 23**

10          Before granting preliminary approval of the settlement, the Court should determine that the

11   proposed settlement class meets the requirements of Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S.

12   591, 620 (1997); Manual for Complex Litigation, § 21.632.  An analysis of the requirements of Rule

13   23(a) and (b)(3), commonly referred to as numerosity, commonality, typicality, adequacy,

14   predominance, and superiority, shows that certification of this proposed Settlement Class is appropriate.

15             **2.**     **The Proposed Classes Are Sufficiently Numerous**

16          The numerosity requirement is met where "the class is so numerous that joinder of all members

17   is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, courts will find a class sufficiently numerous if it

18   consists of 40 or more members. *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1121

19   (E.D. Cal. 2009) (numerosity is presumed at a level of 40 members).  Here, Defendant estimates that

20   there are approximately 568 Wage and Hour Settlement Class Members and approximately 6,526

21   FCRA Settlement Class Members, satisfying the numerosity requirement.

22             **3.**     **There are Questions of Law and Fact that Are Common to the Class**

23          The second Rule 23(a) requirement is commonality, which is satisfied "if there are questions of

24   law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The operative criterion for commonality is

25   "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the

26   litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The commonality

27   requirement is "construed permissively." *Hanlon*, 150 F.3d at 1019-1020. Where "the circumstances of

28   each particular class member vary but retain a common core of factual or legal issues with the rest of

*Hubbard v. Henkel Corporation*                  Amended Notice of Motion and Motion for
                                                    Preliminary Approval of Class Action Settlement

the class, commonality exists." *Parra v. Bashas,' Inc*., 536 F.3d 975, 978-79 (9th Cir. 2008).

Common questions exist as to the Wage and Hour Settlement Class: 1) Did Defendant maintain legally compliant meal and rest break policies? 2) Was Defendant's policy regarding reimbursements for cell phones lawful? 3) Did Defendant fail to pay Wage and Hour Settlement Class Members for all hours worked, due to security checks and supervisors contacting them off-the-clock? and 4) Did Defendant fail to properly calculate the regular rate of pay by failing to calculate shift differential pay into the regular rate of pay?

Common questions also exist as to the FCRA Settlement Class. Here, each FCRA Settlement Class Member executed an authorization form disclosing the employer's intent to obtain a credit report or background check on a current or prospective employee that also contained extraneous information. One single common question resolves the FCRA dispute: whether Defendant willfully violated the law by using their form. Accordingly, the Court should find commonality. *See Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 417-418 (N.D. Cal. 2014) (finding commonality on a contested certification motion where one common question resolves the issue of whether a defendant violated the FCRA by failing to include certain mandated information in the disclosure form).

### 4.    Plaintiff's Claims Are Typical of the Proposed Settlement Class

"Like the commonality requirement, the typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F. 3d at 1020)).  "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 734 (9th Cir. 2007). Thus, typicality is "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001) (quoting *Marisol v. Giuliani*, 126 F.3d 372, 376 (2nd Cir. 1997)).

Plaintiff's claims are typical of the Wage and Hour Settlement Class. She was subjected to the same meal and rest break policies, reimbursement policies, failure to properly calculate the regular rate of pay policies, and failure to pay for all hours worked policies.

1    Similarly, Plaintiff asserts that FCRA Settlement Class Members' claims arising from

2    Defendant's alleged unlawful use of the disclosure form is reasonably co-extensive with the legal

3    claims asserted by Plaintiff. Each Settlement Class Member's claims arise from the same underlying

4    conduct—namely, Defendant's failure to use a disclosure form free of extraneous language, in

5    contravention of the FCRA. Plaintiff's claims are thus typical of the Class.

6        **5.    Plaintiff and Plaintiff's Counsel Will Adequately Represent the Interests of**

7            **the Proposed Settlement Class**

8    Adequacy is satisfied, because "the representative parties will fairly and adequately protect the

9    interests of the class," Fed. R. Civ. P. 23(a)(4). Adequacy will be found if (1) the proposed

10   representative plaintiff does not have conflicts of interest with the proposed class, and (2) the plaintiff is

11   represented by qualified and competent counsel. *Hanlon*, 150 F.3d at 1020.    Here, Plaintiff is adequate

12   since she has no conflict of interest with the proposed Class. In addition, Plaintiff is represented by

13   competent counsel with deep experience in litigating class actions including wage and hour and FCRA

14   actions, and who do not have a conflict of interest with the class. (*See* Setareh Decl.¶¶ 16, 18-22.) Thus,

15   Plaintiff satisfies the adequacy prong.

16       **6.    Common Issues Predominate Over Individual Issues**

17   "In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class

18   certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)."

19   *Hanlon*, 150 F.3d at 1022.  Here, the proposed Class is maintainable under Rule 23(b)(3), as common

20   questions predominate over any question affecting only individual members, and class resolution is

21   superior to other available methods for a fair resolution of the controversy. *Id*. (citing Fed. R. Civ. P.

22   23(b)(3)).

23   Here, for purposes of settlement, the predominance test is satisfied, as the proposed Settlement

24   makes relief available for all Settlement Class Members based solely on easily ascertainable criteria,

25   bypassing whatever individual evidentiary and factual issues that could arise in litigation in determining

26   liability or damages. Consequently, common questions predominate over individual issues.

27       **7.    Class Settlement Is Superior to Other Available Means of Resolution**

28   Similarly, there can be little doubt that resolving all Settlement Class Members' claims through a

1    single class action is superior to a series of individual lawsuits. "From either a judicial or litigant

2    viewpoint, there is no advantage in individual members controlling the prosecution of separate actions.

3    There would be less litigation or settlement leverage, significantly reduced resources and no greater

4    prospect for recovery." *Hanlon*, 150 F.3d at 1023.  Indeed, the terms of the Settlement negotiated on

5    behalf of the Class demonstrate the advantages of a collective bargaining and resolution process.

6         Furthermore, manageability at trial is not a concern in the class action settlement context, "for the

7    proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

8    Additionally, although the benefits of the Settlement negotiated on behalf of the Class are significant, the

9    amount of penalties made available for FCRA violations, ranging from $100 to $1,000, is not nearly

10   enough to incentivize individual class members into action. *See Wolin v. Jaguar Land Rover N. Am.*, 617

11   F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost

12   of litigating on an individual basis, this [superiority] factor weighs in favor of class certification.");

13   *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the

14   problem that small recoveries do not provide the incentive for any individual to bring a solo action

15   prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry

16   potential recoveries into something worth someone's (usually an attorney's) labor."). Here, the efforts

17   and funds required to marshal the type of evidence, including potentially expert testimony, to establish

18   liability against well-financed corporate defendant would also discourage Settlement Class Members

19   from pursuing litigation.

20         The superiority of proceeding through the class action mechanism is demonstrable in this case.

21   Through the class action device, Plaintiff's counsel was able to negotiate a global Settlement with

22   Defendant that, if approved, will provide Settlement Class Members with immediate monetary relief. As

23   the class action device provides the superior means to effectively and efficiently resolve this controversy,

24   and as the other requirements of Rule 23 are satisfied, certification of the proposed Settlement Class is

25   appropriate.

26   **C.    The Proposed Class Notice Adequately Informs Settlement Class Members About**
           **the Case and Proposed Settlement**

27

28         Upon certifying a Rule 23(b)(3) class, Rule 23(c)(2)(B) requires the Court to "direct to class

*Hubbard v. Henkel Corporation*                                   Amended Notice of Motion and Motion for
                                                                   Preliminary Approval of Class Action Settlement

1    members the best notice that is practicable under the circumstances, including individual notice to all

2    members who can be identified through reasonable effort." In addition, Rule 23(e)(1) requires that before

3    a proposed settlement may be approved, the Court "must direct notice in a reasonable manner to all class

4    members who would be bound by the proposal." The notice given "must be reasonably calculated, under

5    all the circumstances, to apprise interested parties of the pendency of the action and afford them an

6    opportunity to present their objections. *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306,

7    314 (1950).

8          The parties have agreed on a notice plan that satisfies the requirements of Rule 23. (Settlement

9    Agreement § 46.) The Class Notice includes all the content required by Rule 23(c)(2)(B), such as a

10   description of the action and Class claims, as well as the Settlement Class Members' right to opt out of,

11   object to, or comment on the proposed Settlement, including any application for attorneys' fees, costs,

12   and service awards. *See Churchill Village*, 361 F.3d at 576 ("Notice is satisfactory if it generally

13   describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

14   investigate and to come forward and be heard.") (internal quotation omitted).  Plaintiff will file her

15   Motion for Attorneys' Fees no later than 15 days prior to the response deadline (45 days after the initial

16   mailing) for opt-outs and objections and will post the filed motion to the Settlement Administrator's

17   website maintained for this Settlement so that Class Members can access the Motion and other papers

18   freely.  *In re Online DVD Antitrust Litig.,* 779 F.3d 934, 954 (9th Cir. 2015) (holding that schedule

19   requiring fee motion to be filed 15 days before objection deadline satisfies requirement that class

20   members are able to review fee motion before deciding whether to object).

21          The proposed Settlement Administrator JND Legal Administration is an experienced

22   administrator whose principals have managed many class action settlements.  (Setareh Decl. ¶ 48.) The

23   settlement administrator selection process consists of requesting and obtaining bids from three

24   prospective settlement administrators: JND Legal Administration, Phoenix Class Action Settlement

25   Administrators and CPT Group, Inc. (*Id*.). Ultimately, JND Legal Administration was selected because

26   they submitted the most comprehensive bid. (*Id*.) In the last two years, Class Counsel has utilized JND

27   Legal Administration once for the purpose of disseminating Class Notice after preliminary approval. (*Id*.)

28   In counsel's experience as class counsel in similar employment actions with a similar number of

*Hubbard v. Henkel Corporation*                                    Amended Notice of Motion and Motion for
                                                                   Preliminary Approval of Class Action Settlement

1  employees, a cap of $40,000 is a fair, adequate, and reasonable amount for administration fees, and

2  should be preliminarily approved.  (*Id*.)

3          **D.      Notice Pursuant to the Class Action Fairness Act of 2005**

4          Notice pursuant to Section 1715(b) of the Class Action Fairness Act of 2005 ("CAFA") to the

5  appropriate federal and state officials is required in this action because this action is a class action

6  pending in federal court and because it was removed from state court pursuant to the CAFA removal

7  provisions. 28 U.S.C. §§ 1332(d), 1453(b), 1711(2).  Defendant will provide notice to the appropriate

8  state officials within 10 days following the filing of the motion for preliminary approval. 28 U.S.C. §

9  1715(b). (Setareh Decl. ¶ 49).

10         **E.      The Proposed Service Award to Plaintiff Is Fair**

11         Courts routinely approve incentive awards to compensate named plaintiffs for the services they

12  provide and the risks they incur during class action litigation, often in much higher amounts than that

13  sought here.  (*See, e.g Vranken v. Atlantic Richfield Co.* (N.D. Cal. 1995) F. Supp. 295 (approving

14  $50,000 service award).)

15         Here, under the Settlement Plaintiff may seek a service award of up to $7,500, which is entirely

16  reasonable given Plaintiff's efforts in this case and the risks she undertook on behalf of the class. Plaintiff

17  spent considerable time speaking with her counsel, gathering documents, assisting counsel in preparing

18  for the mediation, and reviewing the Settlement, among other things, and her assistance was instrumental

19  in achieving a settlement amount that is significant to the similarly situated individuals she sought to

20  represent. (Setareh Decl., ¶ 17.) Further, Plaintiff took on the personal risk of facing intrusive discovery

21  demanded by her former employer, of making her future employment prospects uncertain, and exposed

22  herself to a possible cost award if the litigation were lost.  (*Id*.) Thus, the service award requested is

23  appropriate and justified as part of the overall Settlement secured on behalf of the Class.

24         In any event, any Settlement Class Member who feels the requested amount is not warranted will

25  have an opportunity to object under the terms of the Settlement.

26  **IV.    CONCLUSION**

27         The parties have negotiated a fair and reasonable settlement.  Accordingly, Plaintiff moves the

28  Court to preliminarily approve the Settlement Agreement; direct the dissemination of notice to the class

1 | as proposed; and set a hearing date and briefing schedule for final Settlement approval and Plaintiff's fee

2 | and expense application.

3 |                                        Respectfully submitted,

4 | DATED:  March 26, 2021                 SETAREH LAW GROUP

5 |                               By: /s/ Shaun Setareh
                                       SHAUN SETAREH
6 |                                    THOMAS SEGAL
                                       FARRAH GRANT
7 |                                    Attorneys for Plaintiff
8 |                                    Deborah Hubbard

*Hubbard v. Henkel Corporation*                    Amended Notice of Motion and Motion for
                                        Preliminary Approval of Class Action Settlement