Shaun Setareh (Cal. State Bar No. 204514)
  shaun@setarehlaw.com
Thomas Segal (Cal. State Bar No. 222791)
  thomas@setarehlaw.com
Jose Maria D. Patino, Jr. (Cal. State Bar No. 270194)
  jose@setarehlaw.com
SETAREH LAW GROUP
9665 Wilshire Boulevard, Suite 430
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff
DEBORAH HUBBARD

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH HUBBARD, on behalf of herself, all other similarly situated, | Case No. 4:19-cv-04346-JST |
| *Plaintiff,* | **PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION COSTS, AND ENHANCEMENT AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| HENKEL CORPORATION, a Delaware corporation; and DOES 1 through 50, inclusive, | [Filed Concurrently with the Declarations of Shaun Setareh, Andrew Choi, Deborah Hubbard and [Proposed] Order] |
| *Defendants.* | |
| | Date:       April 21, 2022 |
| | Time:       2:00 p.m. |
| | Place:      Courtroom 6 |
| | Judge:      Hon. Jon S. Tigar |

# **TABLE OF CONTENTS**

*Page*

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM IN SUPPORT OF MOTION ......................................................................1

I.      INTRODUCTION/SUMMARY OF ARGUMENT ......................................................1

II.     BACKGROUND ...........................................................................................................2

III.    THE SETTLEMENT ......................................................................................................5

        A.      The Settlement Class ..........................................................................................5

        B.      Notice Process .....................................................................................................6

        C.      Maximum Settlement Amount and Distributions. ..............................................7

        D.      Scope of the Class Member Releases ..................................................................8

IV.     THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL........................8

        A.      The Best Practical Notice of Settlement Has Been Provided to the Class. ...........8

        B.      The CAFA Notice Requirements Have Been Satisfied. .......................................9

        C.      Final Approval Standards under Rule 23. .........................................................10

        D.      The Settlement Is Presumptively Fair Because of the Positive Response to the
                Settlement by Class Members, the Significant Investigation Conducted, Class
                Counsel's Experience, and Arm's-Length Negotiations. .....................................10

                1.      Class Members' Response to the Settlement Is Positive...........................11

                2.      The Settlement Was Reached Only After the Parties Engaged in Substantial
                        Investigation and Analysis of the Legal Issues. .......................................11

                3.      Counsel's Endorsement of the Settlement Is Entitled to Great Weight. ....12

                4.      The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-
                        Length Negotiations. ................................................................................12

                5.      The Settlement Provides Substantial, Certain Benefits and Avoids the Risk,
                        Cost, Delay, and Burden of Further Litigation. .......................................12

                        a.      The Value of the Settlement Favors Final Approval.....................12

                        b.      Further Litigation Would Involve Risk, Expense, Delay, and Burden
                                on Class Members. .......................................................................13

V.      THE COURT SHOULD GRANT THE REQUESTED ATTORNEYS' FEES,

REIMBURSEMENT OF LITIGATION COSTS, AND ENHANCEMENT AWARD ..................14

    A.    The Legal Standard for Attorneys' Fee Awards ....................................................14

    B.    The Fee Award Is Reasonable and Should Receive Final Approval .....................14

        1.    An Excellent Result Was Achieved on Behalf of the Class .....................14

        2.    The Experience, Reputation, and Ability of Class Counsel ......................17

        3.    The Effort Required by the Litigation Justifies the Fee ............................17

        4.    The Complexity of the Legal and Factual Issues.....................................18

        5.    Class Counsel Assumed Substantial Risk ................................................18

        6.    The Fee is Reasonable Under the Common Fund Doctrine.....................18

            a.    The standard fee award in class actions has, over time, resolved itself as one-third of the recovery in common fund cases...................................19

            b.    Plaintiffs seek 25% of the Settlement Fund in fees and costs less than $20,000. ...............................20

        7.    A Lodestar Analysis Supports the Requested Fee ...................................20

        8.    Important Public Policies Are Advanced by Awarding Reasonable Fees to Skilled Class Counsel ...................................22

    C.    The Enhancement Awards  Are Reasonable .........................................................23

    D.    The Settlement Administrator's Expenses Should Be Approved...........................24

VI.    CONCLUSION .....................................................................................................24

<u>**NOTICE OF MOTION AND MOTION**</u>

To the Clerk of Court and all interested parties:

PLEASE TAKE NOTICE THAT on April 21, 2022 at 2:00 p.m., or as soon thereafter as counsel may be heard, in Courtroom 6 of this Court, located at the Ronald V. Dellums Federal Building and United States Courthouse, 1301 Clay Street, 2nd Floor, Oakland, California 94612, before the Honorable Jon S. Tigar, plaintiff Deborah Hubbard ("Plaintiff") hereby does and will move the Court to grant, pursuant to Rule 23, Federal Rules of Civil Procedure, final approval of the Parties' Class Action Settlement Agreement and Release of Claims (the "Settlement") (ECF 37-1), and entry of judgment in accordance with the Settlement.

Plaintiff makes this motion on the grounds that the Settlement, which was reached after arm's-length negotiations by counsel for Plaintiff and the Class, and counsel for Defendant, is fair and reasonable, has drawn an overwhelmingly favorable response from the Class (indeed, not a single objection to the Settlement has been made to date), and should be given final approval by the Court for all the reasons set forth in the memorandum in support of the motion.

The motion is based on this notice of motion and motion; the following memorandum in support of the motion; the accompanying declarations of Andrew Choi, Shaun Setareh, and Deborah Hubbard in support of this motion; the proposed form of Order Granting Motion for Final Approval of Class Action Settlement, Attorneys' Fees, Reimbursement of Litigation Costs, and Enhancement Award; all matters of which the Court may take notice; and any oral and documentary evidence presented at the hearing on the motion.

<u>**MEMORANDUM IN SUPPORT OF MOTION**</u>

## I.     INTRODUCTION/SUMMARY OF ARGUMENT

The Parties' settlement of this wage-and-hour and Fair Credit Reporting Act ("FCRA") class action (the "Settlement") meets the criteria for final approval. The Settlement fairly resolves Plaintiff's claims that Defendant violated California wage-and-hour laws by failing to pay her and the settlement classes for off-the-clock work; provide them with compliant meal and rest periods; provide reimbursement of necessary expenditures; provide them with compliant wage statements; and pay their final wages on time. The Settlement also fairly resolves Plaintiff's claim that Henkel violated the FCRA by obtaining employment applicants' authorization to procure background check reports through the use of a disclosure forms that did not comply with the FCRA's requirements. The Settlement is the product of arm's-length negotiations by experienced

counsel after significant discovery, and recognition of the strengths and weaknesses of each side's positions. The Settlement has received the overwhelming support of the Class, with not a single objection to the Settlement made to date.

The Settlement, in the gross amount of $2,257,458.54[1], readily satisfies the Rule 23 standard of being "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Specifically:

- Class Counsel (who are highly experienced handling complex FCRA and wage-and-hour class and collective actions) conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the action before agreeing to the Settlement. (Declaration of Shaun Setareh ("Setareh Decl."), ¶ 8.)

- The Settlement is consistent with the strengths and weaknesses of Plaintiff's claims given the risk, expense, complexity, and likely duration of further litigation. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

- The Class responded overwhelmingly favorably to the Settlement. The Settlement Administrator has received only 12 complete and timely opt-out requests and **no** objections from the 6,562 Class Members who received notice of the Settlement. (Declaration of Andrew U. Choi ("Choi Decl."), ¶¶ 15-18.) Thus, the Parties respectfully submit that final approval of the Settlement should be granted and judgment entered accordingly.

## II.    BACKGROUND

At the times relevant to the action, Henkel operates worldwide with leading innovations, brands, and technologies in three business areas: Adhesive technologies, Beauty Care, and Laundry and Home Care. (https://www.henkel-northamerica.com/company) During the applicable limitations periods here, Henkel estimates that it employed approximately 469 non-exempt employees in California and had 6,200 individuals apply for employment in the United States. (Choi Decl., ¶ 4.)

---

[1] On December 22, 2021, JND made the parties aware that the workweeks attributed to the Wage and Hour Settlement Class in the Class List was 110,744 (an increase of 13.1% from the estimated 97,918 workweeks in the Settlement Agreement). (Choi Decl., ¶ 19.) Accordingly, pursuant to Section 5.5.1 of the Settlement Agreement, JND calculated that an increase of 8.1% to the Wage and Hour Settlement Share was required. (*Id.*) This increase brought the Gross Settlement Amount to $2,257,458.54. (*Id.*)

1        Plaintiff alleges that while working as an hourly, non-exempt employee, Plaintiff and class members

2    were required to stop at the facility gate in their car and go through a security check before entering the facility.

3    (ECF 36 at 8-9.) The security guard checked to make sure the class members had clearance to enter the facility

4    each time they entered the facility. (*Id.*) After undergoing the security check, Plaintiff and class members drove

5    their car to the parking area, parked their cars, and walked to the area they were assigned to and clocked in.

6    (*Id.*) This travel time was under Defendant's control. (*Id.*) When they approached the time clock, they had to

7    scan in their badge, run their finger through the fingerprint scanner and punch in their code to be clocked in.

8    (*Id.*) Accordingly, by the time Plaintiff and the putative class logged in for their shift, approximately seven

9    and a half minutes had passed – all of which were not properly recorded as time worked and which resulted in

10   Plaintiff and the putative class not being paid for all hours worked by Defendant. (*Id.*) Plaintiff further alleges

11   that the Settlement Class Members also have a claim for off-the-clock work due to receiving text messages

12   from supervisors before or after their shift. (*Id.*)

13       Plaintiff also alleges that she and class members were required to utilize their own personal cell phone

14   to perform their job duties, Defendant did not reimburse them for utilizing their own personal cell phone to do

15   so. (ECF 36 at 12.)

16       Plaintiff further alleges that she and class members were not provided with meal periods of at least 30

17   minutes for each 5-hour work period due to (1) Defendant's policy of not scheduling each meal period as part

18   of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) imposing so

19   much work on each employee such that it made it unlikely that an employee would be able to take their breaks

20   if they wanted to finish their work on time; and (4) no formal written meal and rest period policy that

21   encouraged employees to take their meal and rest periods. (ECF 36 at 9-10.) Plaintiff further alleges that there

22   were often times when she and the putative class were unable to clock out for their meal periods. (*Id.*) In one

23   instance, Plaintiff alleges that she informed her supervisor that she was unable to take her meal period that day.

24   (*Id.*) Her supervisor allegedly stated, "that is okay, I'll fix it" and altered Plaintiff's time to show that she had

25   taken a compliant meal period rather than pay the required premium. (*Id.*)

26       Plaintiff further alleges that Settlement Class Members often were unable to take a rest break due to:

27   (1) Defendant not having a compliant formal written rest period policy; (2) Defendant's policy of not

28   scheduling each rest period as part of each work shift; (3) Defendant chronically understaffing each work shift

with not enough workers; and (4) Defendant imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time. (ECF 36 at 11.)   Plaintiff specifically alleged that Defendant did not have fully compliant rest break policies. (*Id.*) For the period of June 26, 2015 to July 2016, Defendant's break policy was deficient it that it only stated: "Your schedule, including rest and meal periods, will be set by local management." (ECF 42, ¶ 33.) Henkel's Employee Handbook Supplement for California Employees 2016 and 2018 have more detailed and compliant language regarding breaks but are still deficient in that they do not state that premium pay will be paid when employees do not receive a 10-minute uninterrupted rest break. (*Id.*)  Henkel's rest break policy is also flawed, as it requires employees to stay on premises: "Rest periods are counted and paid as time worked. Therefore, Employees may not leave the premises or be absent from the work areas beyond the allotted time."  (*Id.*, ¶ 44.)

Plaintiff also alleges that she and the putative class were paid at a shift differential of $1.00 and at an overtime rate of $1.50.  (ECF 36 at 11-12.)  When Plaintiff and the putative class received their wage statements, their pay was allegedly not appropriately calculated because this differential was not included in their regular rate of pay.  (*Id.*)

Plaintiff also alleges claims under Labor Code §§ 203 and 226 and the UCL derived from the foregoing claims for failure to pay for all time worked, failure to reimburse, failure to properly calculate the regular rate of pay, and failure to provide meal and rest periods.  (ECF 36 at 12, 23-29.)

Plaintiff finally alleges that Henkel obtained her employment applicants' authorization to procure background check reports through the use of a disclosure form that did not comply with the FCRA's requirements. (ECF 36 at 13-16.)  The disclosure form is three pages long and contains extraneous language including the following: 1) a paragraph regarding the release of medical records; 2) state law language; 3) a paragraph regarding federal law and state law prohibitions on discrimination in employment; 4) a statement of the applicant's prior names used and the dates those names were used; and 5) a statement of the applicant's 7-year residence history, including addresses and dates of residence.  (*See* ECF 42-2.)

Defendant denies all liability and that the policies allegedly giving rise to these claims are unlawful. (Setareh Decl., ¶ 11.) Defendant further asserts that class certification is improper other than for settlement purposes. (*Id.*)

Plaintiff obtained data about the claims and defenses, including training material, policies, time and

1  punch data, compensation records and the relevant disclosure forms. (ECF 42, ¶ 7.) Before the mediation, the

2  parties each investigated the claims asserted, the legal authorities supporting and challenging them, and

3  prepared detailed mediation briefs. (ECF 42, ¶ 8.)

4  As described in the Plaintiff's Amended Motion for Preliminary Approval of Settlement, the

5  Settlement was only reached after a lengthy negotiation process. (ECF 41 at 21-22.) The Parties participated

6  in a mediation with Francis "Tripper" Ortman, Esq., a nationally recognized mediator, on April 28, 2020. (*Id.*)

7  At the mediation, the Parties debated their legal positions, the likelihood of certification of Plaintiffs' claims,

8  and the legal bases for the claims and defenses. (*Id.*)  Ultimately, at mediation, the Parties agreed to resolve

9  this matter on a class-wide basis. (*Id.*)

10  As part of the settlement, the Parties filed a stipulation for leave so that Plaintiff could file her First

11  Amended Complaint ("FAC"), to add a PAGA claim that was pending between the Parties in a separately filed

12  action in Santa Clara Superior Court. (ECF 32.)  The Court granted the Parties' stipulation on July 29, 2020.

13  (ECF 35.)

14  Plaintiff filed her original Motion for Preliminary Approval on July 28, 2020. (ECF 34.)  On February

15  25, 2021, the Court issued its Order Denying Motion for Preliminary Approval of Class Action Settlement,

16  advising the Parties of a number of issues that needed to be addressed before preliminary approval could be

17  granted and directing Plaintiff to file a revised motion within 30 days. (ECF 40.)  The Parties did so, and

18  Plaintiff filed an Amended Motion for Preliminary Approval on March 26, 2021. (ECF 41.)  On November

19  29, 2021, the Court granted preliminary approval of the Settlement. (ECF 45.)

20  **III.    THE SETTLEMENT**

21  The following is a summary of the material elements of the Settlement.

22  **A.    The Settlement Class**

23  Pursuant to the Settlement terms and the Court's order granting preliminary approval, the following

24  Classes were certified:

25  - **Wage and Hour Settlement Class**: All non-exempt persons employed by Defendant in the
26  State of California during the period of June 26, 2015 through November 29, 2021.

27  - **FCRA Settlement Class**: All individuals nationwide on whom Defendant procured a
   consumer report between June 26, 2014 and December 1, 2019, and who did not receive a
   copy of their report before June 26, 2017.

28

(ECF 45, ¶ 5.)  There are 6,838 unique Settlement Class Members.  (Choi Decl., ¶ 6.) 6,200 were FCRA Settlement Class Members, 469 were Wage and Hour Settlement Class Members, and 169 were both.  (*Id.*)

## B.    Notice Process

The Court directed that the proposed Class Notice be sent to Class Members in the manner specified by the Settlement and appointed JND Legal Administration ("JND"), to administer the Settlement.  (ECF 45.) The Parties implemented the Court's directions in this regard.

On December 10, 2021, counsel for Defendant provided JND with a data file from Defense Counsel containing the names, last known mailing addresses, telephone numbers, and other unique identifying information for Settlement Class Members. (Choi Decl., ¶ 6.)  The date file contained a total of 7,172 rows of data and also indicated whether an individual was considered a member of the FCRA Settlement Class and/or the Wage and Hour Settlement Class. (*Id.*) After review of the data, JND identified 6,838 unique Class Members to issue Notice of Class Action Settlement ("Class List"). (*Id.*) Of the 6,838 unique Settlement Class Members on the Class List, 6,200 were FCRA Settlement Class Members, 469 were Wage and Hour Settlement Class Members, and 169 were both a FCRA Settlement Class Member and a Wage and Hour Settlement Class Member. (*Id.*)  The Class List was promptly loaded into a dedicated database established for the Settlement.  (*Id.*)  On December 22, 2021, Defense Counsel provided JND an electronic data file containing, among other information, the last-known address of one (1) Settlement Class Member that had multiple records.  (*Id.*, ¶ 7.)  JND promptly loaded this information into the Settlement database. (*Id.*)  On January 6, 2022, Defense Counsel provided JND an electronic data file containing, among other information, corrected unique identifying information for eight (8) Settlement Class Members that had multiple records and other unique identifying information for 17 Settlement Class Members. (*Id.*, ¶ 8.) JND promptly loaded this information into the Settlement database.  (*Id.*)

Prior to mailing Class Notice, JND updated the address information for 1,325 Class Members using data from the National Change of Address (NCOA) database.  (*Id.*, ¶ 9.)  Pursuant to Section 12 of the Preliminary Approval Order, on January 3, 2022, JND mailed Notice of Class Action Settlement ("Class Notice") by USPS first class mail, postage prepaid, to the Class List.  (*Id.*, ¶ 10, Ex. B.)

As of February 17, 2022:

- 950 Class Notices have been returned to JND as undeliverable without a forwarding address. (*Id.*, ¶

11.)  JND performed advanced address research for these undeliverables and re-mailed 806 Notices to a new address.  (*Id.*)  Of the re-mailed 806 Class Notices, 73 were returned as undeliverable a second time.  (*Id.*)  In addition, 50 Class Notices were returned with a forwarding address from the USPS that were promptly remailed.  (*Id.*)  Of the 50 forwarded Class Notices, 4 were returned as undeliverable. (*Id.*)

- 6,617 or 97% of the Class Members on the Class List sent mail Class Notice were deemed delivered and 221 or 3% were deemed undeliverable.  (*Id.*, ¶ 12.)

- JND has received 12 Opt-Outs.  (*Id.*, ¶ 16.)  The Response Deadline is March 24, 2022.  (*Id.*, ¶ 15.)

- JND has received no Objections.  (*Id.*, ¶ 18.)  The Response Deadline is March 24, 2022.  (*Id.*, ¶ 17.)

**C.     Maximum Settlement Amount and Distributions.**

The Settlement creates a Gross Settlement Amount ("GSA") of $2,125,000.00.  (ECF 37-1 at 6, ¶ 1.23.)  The GSA includes all Individual Settlement Payments (including any employee share of payroll taxes), any Class Representative Service Award, the PAGA Payment, Administrative Costs, and the Class Counsel Payment.  (*Id.*)

On December 22, 2021, JND made the parties aware that the workweeks attributed to the Wage and Hour Settlement Class in the Class List was 110,744 (an increase of 13.1% from the estimated 97,918 workweeks in the Settlement Agreement). (Choi Decl., ¶ 19.)  Accordingly, pursuant to Section 5.5.1 of the Settlement Agreement, JND calculated that an increase of 8.1% to the Wage and Hour Settlement Share was required. (*Id.*) This increase brought the GSA to $2,257,458.54.[2]

The Class Counsel are only seeking $13,731.24 in costs.  (*Id.*, ¶ 20.)  After all previously anticipated court-approved deductions from the GSA, a Net Settlement Amount of $1,603,727.30 is estimated to be available to pay the Class Members' Settlement Shares.  (*Id.*)

Under the Settlement, all Settlement Class Members who do not submit valid and timely Requests for Exclusion will receive a settlement check payment. The amount of the Settlement Benefit each Settlement

---

[2] This increased GSA amount was not known to the Parties prior to JND's analysis of the class workweek data provided by Defendant. Due to operation of the Escalator Clause in the Settlement, Plaintiff would, if approved by the Court, request 25% of the increased GSA in attorneys' fees, which is the Ninth Circuit's benchmark for presumptively reasonable fees from a common settlement fund. 25% of the current GSA would be **$564,364.64**.  The analysis provided in the Choi Declaration assumed the attorneys' fees to be 25% of the original GSA, and those numbers will be used in this Motion where the Choi Declaration is cited.

1    Class Member will receive will be determined, based on the total amount of the Net Settlement Fund to be

2    allocated among all Settlement Class Members and the total number of Settlement Class Members. 77% of

3    the Net Settlement Fund (i.e., $1,635,550) will be allocated to the Wage and Hour Settlement Class and 23%

4    will be allocated to the FCRA Settlement Class (i.e., $489,450). The Net FCRA Settlement Amount shall be

5    allocated to FCRA Settlement Class Members on a *pro rata* basis. (ECF 37-1, ¶ 5.5.2.) Each Wage and Hour

6    Settlement Class Member will be eligible to receive a portion of the Net Wage and Hour Settlement Amount

7    based on the following formula:

> The individual Wage and Hour Settlement Share payment to a Wage and Hour Settlement Class Member will be calculated by dividing the number of Eligible Workweeks attributed to the Wage and Hour Settlement Class Member by all Eligible Workweeks attributed to members of the Wage and Hour Settlement Class, multiplied by the Net Wage and Hour Settlement Amount. Otherwise stated, the formula for a Class Member is: (individual's Eligible Workweeks ÷ total Wage and Hour Settlement Class Eligible Workweeks) x Net Wage and Hour Settlement Amount.

12    (*Id.*, ¶ 5.5.1.)  Thus, Wage and Hour Settlement Class Members will be compensated based on the number of

13    eligible workweeks worked. (*Id.*)

14        The entire GSA will be paid out; none of it will revert to Defendant.  Settlement checks that are

15    uncashed after 180 days will be paid, plus any accrued interest, to Bay Area Legal Aid, as a *cy pres* recipient.

16    (*Id.*, ¶ 5.5.3.)

17        **D.**    **Scope of the Class Member Releases.**

18        In exchange for the Gross Settlement Amount, Class Members will release all claims against

19    Defendant and its related persons and entities that were raised or could have been raised in the action, based

20    on the factual allegations made in the action or otherwise based on or related to the allegations that Defendant

21    failed to pay for off-the-clock work, reimburse business expenses; pay final wages timely; and to provide

22    compliant wage statements, as well as lawful meal and rest periods.  (*Id.*, ¶¶ 6.1, 6.2.)

23    **IV.**    **THE SETTLEMENT SHOULD BE GRANTED FINAL APPROVAL**

24        **A.**    **The Best Practical Notice of Settlement Has Been Provided to the Class.**

25        The mailing of the Class Notice to Class Members, and the general administration of the notice process

26    as described above, meets the requirements for the "best practicable" notice in this case as is necessary to

27    protect the due process rights of Class Members.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12

28    (1985) (provision of "best practicable" notice with description of litigation and explanation of opt-out rights

satisfies due process).  Indeed, individual Class Notice was served on each Class Member at his or her most recent address, after cross-referencing each address with U.S. Post Office records; Class Members also were directed to a dedicated website (www.hubbardvhenkel.com) that included the Notice of Proposed Class Action Settlement and Final Approval Hearing, other Settlement-related information, and the entire ECF Docket for this case.  Moreover, both the Class Notice and Notice of Proposed Class Action Settlement and Final Approval Hearing informed Class Members of the pendency of the action and their right not to participate in the Settlement. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections").  Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the opt-out, comment, and approval process.

This lack of governmental objection to the Settlement further supports final approval.

**B.    The CAFA Notice Requirements Have Been Satisfied.**

Although there is no governmental participant in this case, pursuant to 28 U.S.C. section 1715 (the Class Action Fairness Act ("CAFA")), Defendant provided notice of the Settlement to the Office of the Attorney General for the United States and the Office of the Attorney General for the States of Alaska, Alabama, Arkansas, Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Iowa, Idaho, Illinois, Indiana, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, Nebraska, New Hampshire, North Carolina, North Dakota, New Jersey, New Mexico, Nevada, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, and Wyoming, and all American territories.   (Choi Decl., ¶¶ 4-5, Ex. A.) "[A]lthough CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010).  To date, no federal or state official has raised such concerns.

C.    **Final Approval Standards under Rule 23.**

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy [...] favors settlements, particularly where complex class action litigation is concerned"). On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton*, 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The court should balance "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel [...] and the reaction of the class members to the proposed settlement." *Id.*; *see also Class Plaintiffs*, 955 F.2d at 1291 (quoting *Officers for Justice*, 688 F.2d at 625); *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

D.    **The Settlement Is Presumptively Fair Because of the Positive Response to the Settlement by Class Members, the Significant Investigation Conducted, Class Counsel's Experience, and Arm's-Length Negotiations.**

The Court should begin its analysis of this Settlement with a presumption that it is fair and should be approved, due to (1) the fact that not a single Class Member objected to the Settlement; (2) the meaningful

discovery conducted; (3) Class Counsel's experience in this kind of litigation; and (4) the arm's-length negotiations that took place before an experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arm's-length negotiations conducted by competent counsel after appropriate discovery are *prima facie* evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's-length negotiation, conducted by capable counsel, it is presumptively fair."). These factors are well satisfied here.

### 1.    Class Members' Response to the Settlement Is Positive.

Out of 6,838 Class Members, not a single Class Member objected to the Settlement to date. (Choi Decl., ¶ 18.) *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (holding that in "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action[s] are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837-38 (9th Cir. 1976).

Moreover, only 12 Class Members—0.18% of the total Class—have opted out of the Settlement to date. (Choi Decl., ¶ 16.)

This overwhelmingly positive reaction by the Class strongly supports final approval of the Settlement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850 (N.D. Cal. 2010) (finding opt-out rate of 16 of 329 class members (approximately 4.8%) low, and explaining that where exclusions and opt-outs are low, there is presumption of favorable class reaction).

### 2.    The Settlement Was Reached Only After the Parties Engaged in Substantial Investigation and Analysis of the Legal Issues.

The Parties engaged in substantial investigation and analysis of the legal issues in reaching a Settlement in this case. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (emphasizing that touchstone of analysis is whether "the parties have sufficient information to make an informed decision about settlement," including formal and informal discovery) (citation omitted). Before any mediation, Class Counsel reviewed hundreds of pages of documents, as well as payroll and timekeeping data, produced by Defendant. (ECF 42, ¶ 7.) The Parties also spent significant time preparing for, and taking part, in mediation.

**3.    Counsel's Endorsement of the Settlement Is Entitled to Great Weight.**

The judgment of experienced counsel regarding the settlement is entitled to great weight. *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87 F.R.D. at 18.  Reliance on such recommendations is premised on the fact that "parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (*quoting In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

Here, counsel for both Parties endorse the Settlement as fair, adequate, and reasonable.  Plaintiff's Counsel and Defendant's Counsel each have extensive experience in prosecuting and litigating class action wage-and-hour suits like this one.  (Setareh Decl., ¶¶ 24.)  The fact that qualified and well-informed counsel endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

**4.    The Settlement Is Presumed Fair Because the Parties Engaged in Arm's-Length Negotiations.**

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently. *See Tijero v. Aaron Bros., Inc.*, 301 F.R.D. 314, 324 (N.D. Cal. 2013) (where settlement reached after parties participated in private mediation, settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. C98-1646C, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* (Fed. Judicial Center 1995) § 30.42).

The Parties engaged in a full-day mediation.  (Setareh Decl., ¶¶ 7- 9.)  Before the mediation, the Parties submitted mediation briefing, including detailed data analyses and assessments, and substantial evidence.  (*Id.*)

**5.    The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation.**

**a.    The Value of the Settlement Favors Final Approval.**

The Settlement is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [...]  Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have

won had they proceeded with litigation[.]"   *Officers for Justice*, 688 F.2d at 624 (citations omitted). Accordingly, the "settlement is not to be judged against a […] speculative measure of what *might* have been achieved."   *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (emphasis in original, citation omitted).   In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."   *Hanlon*, 150 F.3d at 1027.   In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road.   *See generally City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

Here, the value of the Settlement—now $2,257,458.54—is a fair and reasonable result, especially in light of the defenses raised by Defendant, including that its meal and rest period policies were legally compliant and that it provided breaks in accordance with California law.   (Setareh Decl., ¶ 8.)   Moreover, the Settlement Share amounts represent a reasonable, meaningful recovery for Class Members.

Accordingly, the $2,257,458.54 Gross Settlement Amount is well within the range of reasonableness.

### b.   Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members.

When a party continues to deny liability, there is an inherent risk in continuing litigation.   In *Thieriot v. Celtic Ins. Co.*, No. C 10-04462 LB, 2011 WL 1522385, at *5 (N.D. Cal. Apr. 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation.   *See also Mora v. Harley-Davidson Credit Corp.*, No. 1:08-CV-01453-BAM, 2014 WL 29743, at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, further litigation would be time-consuming and expensive …").

Similarly here, Defendant continues to contest liability and the propriety of class certification. Defendant's denial of liability, paired with its diligent opposition to class treatment, spotlight the risks of continued litigation and favor granting final approval to the proposed Settlement.   (Setareh Decl., ¶¶ 13-20.)

Moreover, this class action involves intricate legal and factual questions.   Litigating these complex

claims would require substantial additional discovery and pre-trial motions (including motions for certification and decertification), as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence. (*Id.*) Trial itself would require the use of expert witnesses at the damages phase, and would involve numerous complex legal and factual issues. (*Id.*) Once liability had been established on a class-wide basis, Class Members might be required to testify at individual damages mini-trials. (*Id.*) As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class Members, if any, would likely occur only after several years of delay. (*Id.*) In contrast, the Settlement will yield a prompt, certain, and substantial recovery for the Class Members. Such a result benefits the Parties and the court system.

## V.     THE COURT SHOULD GRANT THE REQUESTED ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION COSTS, AND ENHANCEMENT AWARD

### A.     The Legal Standard for Attorneys' Fee Awards

California and the Ninth Circuit, and all federal courts, for that matter, use similar criteria to assess a fee request attendant to a motion for final approval, including: (i) the results achieved on behalf of the class; (ii) class counsel's experience, reputation and ability; (iii) the time and labor required by the litigation; (iv) whether class counsel was precluded from other work; (v) the complexity of the litigation; and (vii) the contingent nature of the litigation. *See Serrano v. Priest*, 20 Cal. 3d 25, 49 (1977); *accord Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002) (identifying similar criteria); *see also* Herr, MANUAL FOR COMPLEX LITIGATION, FOURTH, § 21.71 at 524-27 (2008) (survey of federal criteria similar to California criteria).

### B.     The Fee Award Is Reasonable and Should Receive Final Approval

#### 1.     An Excellent Result Was Achieved on Behalf of the Class

The benefit achieved on behalf of class members defines a primary yardstick against which any fee motion is measured. *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1048.

The Parties reached a Settlement in good faith after negotiating at arm's length with a professional mediator at mediation. (Setareh Decl., ¶ 9.) Settlement occurred only after extensive informal discovery commenced. Through informal discovery in advance of mediation, Defendant provided Class Counsel with documents, including copies of all applicable personnel and payroll policies, and records reflecting Class

Members' hours worked and wages paid, amongst numerous other documents, as well as payroll and time clock data for the putative class. (*Id.*, ¶ 8.)

The information obtained through Plaintiff's informal discovery in advance of mediation including Defendant's employee records and the additional, detailed data about class composition produced for mediation, were sufficient to permit Plaintiff's counsel to adequately evaluate the settlement. (ECF 42, ¶ 9.) And, notably, approval of a class action settlement does not require that discovery be exhaustive. *See, e.g.*, *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (settlement approved where informal discovery gave the parties a clear view of the strength and weaknesses of their cases). The fact that settlement results from arm's-length negotiations following "relevant discovery" creates "a presumption that the agreement is fair." *Linney v. Cellular Alaska Partnership*, 1997 WL 450064, at *5 (N.D. Cal. 1997).

With respect to the claims asserted on behalf of the settlement Class in this case, there are significant risks that support the reduced compromise amount. First, there is risk that class certification could have been denied by way of contested motion. (ECF 42, ¶ 42.) Indeed, while some courts have certified cases of this nature by way of contested motion, including cases brought by Plaintiff's counsel, there are also numerous decisions where courts have declined to certify such claims. (*Id.*) As such, while Plaintiff believes that her claims are amenable to class treatment for purposes other than settlement, Defendant fully intended to contest any motion for class certification and the possibility that class certification might be denied factored into Plaintiff's evaluation of the inherent risks of further litigation. (*Id.*) This risk is heightened by the fact that both parties would have been forced to engage in additional and protracted written discovery, would need to take further depositions, and would have needed to conduct additional factual investigations in order to gather further evidence in support of their positions. (*Id.*)

Second, there is a risk that Defendant could have obtained summary judgment as to Plaintiff's claims. (ECF 42, ¶ 43.) For example, Defendant contends that its timekeeping, meal and rest break, and expense reimbursement policies are legally compliant and that they are, in any event, not subject to common proof.

Even if the Court granted class certification, prevailing at trial would require further risky litigation and likely involve an expensive battle of the experts. Defendant would certainly appeal any verdict favorable to the class, resulting in further delay and the risk that a favorable verdict would be overturned on appeal.

When facing an uncertain resolution of the claims in this Action, settlement is all the more reasonable. Indeed, the Gross Settlement Amount will provide Settlement Class members with real and timely payments as opposed to the largely speculative awards that may or may not otherwise be obtained based on the various litigation risks going forward should the proposed Settlement not be approved. (Setareh Decl., ¶¶ 42-44.) Continued litigation of this lawsuit presented Plaintiffs and Defendant with substantial legal risks that were (and continue to be) very difficult to assess.

In light of the uncertainties of protracted litigation, the settlement amount reflects a fair and reasonable recovery for the settlement Class Members.  The settlement amount is, of course, a compromise figure.  By necessity it took into account risks related to liability, damages, and all the defenses asserted by the Defendant. Moreover, each settlement Class Member will be given the opportunity to opt out of the Settlement, allowing those who feel they have claims that are greater than the benefits they can receive under this Settlement, to pursue their own claims

The highest estimated Wage and Hour Settlement Payment is $3,757.77 and the median estimated Wage and Hour Settlement Payment is $1,739.50. (Choi Decl., ¶ 22.)  The average estimated Wage and Hour Settlement Payment is approximately $1,935.53. (*Id.*)  All FCRA Settlement Payments are estimated to be $57.91. (*Id.*)  The average Individual Settlement Payment for all Settlement Class Members is approximately $234.53, before applicable taxes and withholdings. (*Id.*)

The value of these amounts reflects a fair compromise well within the range of reasonableness.  Given the strong case that Defendant could bring to bear to challenge liability, this is not an inconsequential sum in these challenging economic times.  And, confirming the fundamental fairness of the settlement, Class Members who worked for Defendant longer will receive more of the net settlement share. After analyzing the claims in this matter, Plaintiff has concluded that the value of this Settlement is fair, adequate and reasonable. Based on information provided by Defendant during the litigation, as well as other investigation, Plaintiffs' counsel estimates that the liability exposure on the wage and hour claims is $5,595,271.59 without considering statutory and civil penalties.  (Setareh Decl. ¶ 12.) Thus, the Wage and Hour Settlement Class allocation of $1,234,870.02 represents 22% of the damages the class could reasonably have expected to recover at trial. And the FCRA Settlement Class allocation of $368,857.28 represents 59% of expected damages.  While Plaintiff would certainly have preferred to recover more (and Defendant would have preferred to pay less), this

outcome is favorable considering the risks of further litigation. On that basis, it would be unwise to pass up this settlement opportunity.

How class members respond to a class action settlement is typically addressed in concert with courts' assessments of a settlement's overall benefit to class members. *See generally*, *Vizcaino*, *supra*. State and federal courts alike take the measure of a settlement's "fairness" with reference to the class members' reaction, and specifically the extent to which class members object, and through their objections imply a settlement's unfairness. *See, e.g.*, *7-Eleven Owners for Fair Franchising v. Southland Corp.*, 85 Cal. App. 4th 1135, 1152-53 (2000) (only nine objectors from a class of 5454 was an "overwhelmingly positive" fact that supported approval of the settlement); *Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978) (16 objectors out of 5400 strongest evidence of no dissatisfaction with settlement among class members); *American Eagle Ins. Co. v. King Resources Co.*, 556 F.2d 471, 478 (10th Cir. 1977) (only one objector "of striking significance and import"). The deadline to object has not yet passed. When the final approval motion is filed Plaintiff will provide updated information on the number of objections.

### 2.    The Experience, Reputation, and Ability of Class Counsel

California law also recognizes the "skill and experience of attorneys" as appropriate criteria for evaluating a fee motion. *Flannery v. California Highway Patrol*, 61 Cal. App. 4th 629, 647 (1995); *accord In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) ("skill and efficiency of counsel" among fee motion criteria); *In re Heritage Bond Litig.*, 2005 U.S Dist. LEXIS 13555 at *64 (C.D. Cal. June 10, 2005) (Considering "the quality of Class Counsel's effort, experience and skill"). Class Counsel has had substantial experience with the causes of action here and have regularly litigated employment law class actions. (Setareh Decl., ¶¶ 23-42.)

### 3.    The Effort Required by the Litigation Justifies the Fee

California and federal law also look to the time and labor required in connection with the litigation and settlement of a class action for which final approval is sought. *See Serrano*, 20 Cal.3d at 49, *accord Vizcaino*, 290 F.3d at 1048-50. Compared to the reasonable value of the claims, Class Counsel expended substantial effort to achieve the settlement result. (Setareh Decl. ¶¶ 30-42.)

Class counsel expended considerable time and resources in litigating this matter. The work done by the attorneys working on this case includes communicating with Plaintiff, interviewing Plaintiff in order to

determine the claims in the case, drafting pleadings, reviewing documents produced by Defendant, working up and drafting a mediation brief, working with an expert to analyze the data produced by Defendant, preparing for mediation and preparing and reviewing documents for settlement, drafting the motion for preliminary approval and drafting the motion for attorney fees. (Setareh Decl. ¶¶ 7-10; ECF 42, ¶ 7.)  The "time and labor" criterion weighs in favor of an award of the requested fees.

### 4.    The Complexity of the Legal and Factual Issues

California law recognizes that the litigation's general complexity and "difficulty of the questions involved, and the skill in presenting them" are properly considered.  *Serrano*, 30 Cal. 3d at 49, *accord Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 245 (2001). Here, Complexity of legal issues was a neutral factor.  Accordingly, the complexity of the legal issues weighs in favor of the fees which are presumptively reasonable at 25% of the GSA.

### 5.    Class Counsel Assumed Substantial Risk

The novelty and challenges presented by a class action, as well as the corresponding risk that the class members and class counsel will be paid no recovery or fee, is properly evaluated in connection with a fee motion.  *See Serrano*, 20 Cal. 3d at 49; *accord Vizcaino*, 290 F.3d at 1050-51 (multiplier applied to lodestar cross-check reflects risk of non-recovery). Ninth Circuit and California state courts regard circumstances in which class counsel's work is wholly contingent as a factor weighing in favor of approving a negotiated fee award that approximates market rates.  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-33 (2001).

Courts have found that similar classes do not satisfy predominance for class certification purposes. Class Counsel nevertheless faced that risk, and an excellent result was obtained.

### 6.    The Fee is Reasonable Under the Common Fund Doctrine

Courts in the Ninth Circuit and California generally use the "percentage method" rather than the lodestar approach when awarding attorneys' fees in a common fund settlement.  *See* 7 Witkin, B.E., CALIFORNIA PROCEDURE (2007 Supp.) §§ 255-261 at 236-241 (describing prevalence of percentage method under California law); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989) (Patel, J.) (endorsing percentage method).  *See generally*, *Serrano*, 20 Cal. 3d at 25; *accord Hanlon v.*

*Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

> **a.    The standard fee award in class actions has, over time, resolved itself as one-third of the recovery in common fund cases.**

According to a leading treatise on class actions, "No general rule can be articulated on what is a reasonable percentage of a common fund. Usually, 50% of the fund is the upper limit on a reasonable fee award from a common fund in order to assure that the fees do not consume a disproportionate part of the recovery obtained for the class, although somewhat larger percentages are not unprecedented." *See* Conte & Newberg, Newberg on Class Actions (3rd Ed.) § 14.03. Attorneys' fees that are fifty percent of the fund are typically considered the upper limit, with ***thirty to forty percent commonly awarded in cases where the settlement is relatively small***. *See id*; *see also, Van Vranken v. Atlantic Richfield Company*, 901 F. Supp. 294 (N.D. Cal. 1995) (stating that most cases where 30-50 percent was awarded involved "smaller" settlement funds of under $10 million).

The proposed 25% fee award is consistent with the average fee award in class actions. Awards of 33 percent or more are common in court-approved class actions litigated and settled by Class Counsel and other firms across the state. (Setareh Decl., ¶¶ 28.) Class counsel has been issued one-third of the settlement amount in fees in a number of cases in the Northern District, including recently in *Burnthorne-Martinez v. Sephora USA, Inc*., 2018 WL 5310833, at *3 (N.D.Cal., 2018), *Garza v. Brinderson Constructors L.P.*, Northern District of California Case No. 5:15-cv-05742-EJD ECF No. 80, and *Fronda v. Staffmark Holdings, Inc.*, 2018 WL 2463101, at *13 (N.D.Cal., 2018). (*Id.*)

The Ninth Circuit has directed that, to determine what constitutes a fair and reasonable percentage of the settlement for purposes of calculating common fund attorneys' fees, the courts should use a "benchmark" percentage of 25% of the total fund. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). The percentage can be adjusted upwards where the risks overcome, the benefits obtained and the work necessary to achieve those results supports such an adjustment of the benchmark. In fact, while the Ninth Circuit identified 25% as a fee percentage that is presumptively reasonable, the custom and practice in class actions is to award approximately one-third of a fund as a fee award. *See Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66, n.11 (2008) ("Empirical studies

show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around ***one-third*** of the recovery.") (emphasis added).  Class Members will have the opportunity to object to the proposed award of fees and costs (or any other aspect of the settlement, if they so choose).  However, Class Counsel's election to seek only 25% of the GSA in attorneys' fees is presumptively reasonable.

### b.    Plaintiffs seek 25% of the Settlement Fund in fees and costs less than $20,000.

The compensation sought for Class Counsel is also fair and reasonable.  Here, the gross settlement fund obtained through the efforts of Class Counsel is $2,257,458.54.  Class Counsel has elected to request no more than 25% in fees from the gross settlement amount.  Class Counsel has agreed to request no more than $20,000 in costs. Compared to a lodestar of approximately $209,981.25 based on contemporaneously recorded and reasonably projected hours, the total compensation to Class Counsel is consistent with their lodestar.  The multiplier necessary to reach the total requested compensation is approximately 2.69, a multiplier less than the multipliers of 3 or more that are routinely approved in class settlements.  Plaintiff has actually incurred costs of $13,731.24 in this matter, including filing fees, mediation fees, expert costs, Westlaw charges, PACER charges, travel expenses, and postage charges. (Setareh Decl., ¶ 27.)

### 7.    A Lodestar Analysis Supports the Requested Fee

Despite the widely recognized limitations of the so-called "lodestar" method, California and federal courts recognize the utility of a lodestar "cross-check."  *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 46 (2000).  A lodestar "cross-check" analysis typically happens in three steps. *Cundiff v. Verizon California*, 167 Cal. App. 4th 718 (2008), *accord Vizcaino*, 290 F.3d at 1047.  First, a trial court must determine a baseline guide or "lodestar" figure based on the time spent and reasonable hourly compensation for each attorney involved in the case.  *Serrano*, at 48.  Second, the court sets a reasonable hourly fee to apply to the time expended, with reference to the prevailing rates in the geographical area in which the action is pending.  *Bihun v. AT&T Information System*, 13 Cal. App. 4th 976, 997 (1993) (16 years ago, affirming a $450 per hour rate for a Southern California litigation attorney).  Finally, a "multiplier" of the base lodestar is set with reference to the factors described in detail in this brief.  Courts often apply a positive multiplier to the lodestar to determine a reasonable fee. *E.g. Vizcaino supra* at 1051 (positive multiplier of 3.65.) Across all

jurisdictions, multipliers of up to four are frequently awarded. NEWBERG, §14.03 at 14.  Often, multipliers of greater than four are warranted.

Looking at the work of attorneys for Plaintiffs in this matter (**_and excluding paralegals_**), the lodestar calculation for Setareh Law Group is $209,981.25, calculated as follows:

| Attorney | Bar Year | Hourly Rate | Hours | Total Fees |
|---|---|---|---|---|
| Shaun Setareh | 1999 | $900.00 | 81.25 | $73,125.00 |
| Thomas Segal | 2002 | $750.00 | 92.75 | $69,562.50 |
| William M Pao | 2002 | $750.00 | 1.1 | $825.00 |
| Jose Patino | 2010 | $625.00 | 38.6 | $24,125.00 |
| Farrah Grant | 2013 | $450.00 | 84.3 | $37,935.00 |
| Robert A. Lopez | 2017 | $400.00 | 2.6 | $1,040.00 |
| Lilit Ter-Astvatsatryan | 2018 | $375.00 | 0.75 | $281.25 |
| Maxim Gorbunov | 2021 | $325.00 | 9.5 | $3,087.50 |
| **Total** | | | **310.85** | **$209,981.25** |
| Fees Sought | | | | $564,364.64 |
| **Multiplier** | | | | **2.69** |

(Setareh Decl., ¶ 32.)

This lodestar figure is in line with the requested fee, requiring a multiplier of 2.69. (_Id._)  This is in the typical multiplier range typically applied by district courts. _See, e.g._, _Bellinghausen v. Tractor Supply Co._ 306 F.R.D. 245, 264 (N.D. Cal. 2014) (54 percent of lodestar multipliers fall within the 1.5 to 3.0 range, and 83 percent of multipliers fell within the 1.0 to 4.0 range); _Hopkins v. Stryker Sales Corp._, No. 11-CV-02786-LHK, 2013 WL 496358, at *5 (N.D. Cal. Feb. 6, 2013) (multiplier of 2.86); _Di Giacomo v. Plains All Am. Pipeline, Nos._ 99–4137 & 99–4212, 2001 WL 34633373, at *10–11 (S.D. Fla. Dec. 19, 2001) (5.3 multiplier); _Maley v. Del Global Techs. Corp.,_ 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (4.65 multiplier); _In re Aremissoft Corp. Sec. Litig._, 210 F.R.D. 109, 134–35 (D.N.J. 2002) (4.3 multiplier).

The multiplier needed to align the negotiated fee award with the attorney hours expended here is below the multipliers of three or more routinely approved in class actions.  Accordingly, the lodestar cross-check affirms that the fee award that has been preliminarily approved does in fact fall easily within the range of reasonableness. (_Id._)

The Ninth Circuit has similarly recognized that the lodestar method "creates incentives for counsel to

1    spend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the

2    lodestar method does not reward early settlement." *Vizcaino v. Microsoft Corp*., 290 F.3d 1043, 1050, n.5

3    (9th Cir. 2002).  As a corollary, a defendant willing to recognize a potential error and settle at an early stage

4    would face the increased risk that an early settlement overture would be rejected.  That did not happen here, in

5    part because a percentage of the fund award encourages efficient litigation.  The Ninth Circuit has thus

6    cautioned that, while a lodestar method can be used as a cross check on the reasonableness of fees based on a

7    percentage of recovery method if a district court in its discretion chooses to do so, a lodestar calculation is not

8    required and it did "not mean to imply that class counsel should necessarily receive a lesser fee for settling a

9    case quickly." *Id.*

10       The percentage of recovery method "rests on the presumption that persons who obtain benefits of a

11   lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense."  *Staton*, 327

12   F.3d 938, 967 (9th Cir. 2003).  This rule, known as the "common fund doctrine," is designed to prevent unjust

13   enrichment by distributing the costs of litigation among those who benefit from the efforts of others.  *Paul,*

14   *Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

15       It is only fair that every class member who benefits from the opportunity to claim a share of the

16   settlement pay his or her *pro rata* share of attorney's fees, and Plaintiffs' request for fees here means that

17   Class Counsel seek an amount of fees less than the amount Class Counsel would likely receive if they

18   represented each class member individually.  Typical contingent fee contracts of plaintiffs' counsel provide

19   for attorney's fees of about 40% of any recovery obtained for a client.  (Setareh Decl., ¶ 44.)  It would be

20   unfair to compensate Class Counsel here at a substantially lesser rate because they obtained relief for

21   hundreds of class members. To the contrary, equitable considerations dictate that Class Counsel be rewarded

22   for achieving a settlement that confers benefits among so many people, especially without protracted

23   litigation.  The result achieved by Class Counsel merits an award of attorney's fees equal to 25% of the total

24   recovered value in this case.

25              **8.      Important Public Policies Are Advanced by Awarding Reasonable Fees to
                          Skilled Class Counsel**

26

27       Wage and hours laws "concern not only the health and welfare of the workers themselves, but also the

28   public health and general welfare." *California Grape Etc. League v. Industrial Welfare Com.*, 268 Cal. App.

1    2d 692, 703 (1969).  California's overtime laws "are to be construed so as to promote employee protection."

2    *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 340 (2004) (*citing Ramirez v. Yosemite Water,*

3    *Inc.*, 20 Cal. 4th 785, 794 (1999)).  Courts have also long acknowledged the importance of class actions as a

4    means to prevent a failure of justice in our judicial system.  *Linder v. Thrifty Oil Co*., 23 Cal. 4th 429, 434-435

5    (2000) (citing *Daar v. Yellow Cab Co.*, 67 Cal. 2d 695, 703-704 (1967)).  As a practical matter, therefore,

6    privately initiated class actions are the primary mechanism for enforcement of California's labor code

7    protections.

8               **C.      The Enhancement Awards  Are Reasonable**

9            Enhancement awards serve to reward the named plaintiffs for the time and effort expended on behalf

10   of the class, and for exposing herself to the significant risks of litigation. "Courts routinely approve incentive

11   awards to compensate named plaintiffs for the services they provided and the risks they incurred during the

12   course of the class action litigation."  *Ingram v. The Coca-Cola Co*., 200 F.R.D. 685, 694 (N.D. Ga. 2001); *In*

13   *re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).  In *Coca-Cola*, for example,

14   the court approved enhancement awards of $300,000 to each named plaintiff in recognition of the services

15   they provided to the class by responding to discovery, participating in the mediation process and taking the

16   risk of stepping forward on behalf of the class.  *Coca-Cola*, 200 F.R.D. at 694; *see also Van Vranken v. Atl.*

17   *Richfield Co*., 901 F. Supp. 294, 300 (N.D. Cal. 1995) (approving $50,000 participation award).

18           Here, Plaintiff's counsel requests that the Court grant an enhancement award of $7,500 to Plaintiff.

19   The amount of the enhancement award requested for Plaintiff is reasonable given the risks undertaken by her.

20   Taking the risk of filing a lawsuit against an employer deserves reward, especially in light of the settlement

21   achieved by Plaintiff.  Additionally, Plaintiff was actively involved in the litigation and settlement

22   negotiations of this Action. (Declaration of Deborah Hubbard ("Hubbard Decl."), ¶ 9.) Plaintiff worked

23   diligently with counsel to prepare the action, traveled to and attended the mediation and conferred with

24   counsel regarding settlement negotiations.  (Hubbard Decl., ¶ 9.) Plaintiff undertook to prosecute the cases

25   despite the risk of a cost judgment against her, and despite the potential risk that prospective employers would

26   hold it against her. (Hubbard Decl., ¶¶ 10-11.) The requested enhancement award is reasonable and should be

27   approved.

28

1

**D.** **The Settlement Administrator's Expenses Should Be Approved**

2      The charges for the Settlement Administrator JND has so far incurred $29,338.41, but will not exceed

3   $45,000.00. (Choi Decl., ¶ 23.) JND's costs to administer this settlement are in line with the "reasonable"

4   amount allocated in the Settlement Agreement of an estimated $40,000. (Settlement, ¶ 5.1.)

5   **VI.    CONCLUSION**

6      For the foregoing reasons, the Parties respectfully request that the Court grant final approval of the

7   Settlement and the requested attorneys' fees, reimbursement of litigation costs, and enhancement award for

8   Plaintiff.

9

10  DATED: February 17, 2022                SETAREH LAW GROUP

11                                          */s/ Shaun Setareh*
                                            ───────────────────────────────
12                                          SHAUN SETAREH
                                            THOMAS SEGAL
13                                          JOSE MARIA D. PATINO, JR.
                                            Attorneys for Plaintiff
14                                          DEBORAH HUBBARD

15

16

17

18

19

20

21

22

23

24

25

26

27

28