UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH HUBBARD,<br><br>Plaintiff,<br><br>v.<br><br>HENKEL CORPORATION,<br><br>Defendant. | Case No. 19-cv-04346-JST<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; GRANTING MOTION FOR ATTORNEY'S FEES**<br><br>Re: ECF No. 47 |

Before the Court is an unopposed motion from Plaintiff Deborah Hubbard seeking final approval of the settlement and attorney's fees, litigation costs, a service enhancement award, and a settlement administrator award. ECF No. 47. The Court will grant the motion.

I.  **FINAL APPROVAL OF SETTLEMENT AGREEMENT**

After reviewing the Settlement Agreement (ECF No. 42-1), briefs, and declarations, the Court grants Hubbard's motion for final approval of the settlement:

1.  The Court has held that the non-opt-out class should be certified for the purpose of this Settlement under Federal Rule of Civil Procedure 23, under the terms of the Settlement. The Court confirms that the class preliminarily certified under Rule 23 is appropriate for the reasons set forth in its preliminary approval order, and hereby finally certifies the following non-opt-out class:

    - Wage and Hour Settlement Class: "All non-exempt persons employed by Defendant in the State of California during the period of June 26, 2015 through November 29, 2021." (Settlement Agreement ¶ 1.46).

    - FCRA Settlement Class: "All individuals nationwide on whom Defendant procured a consumer report between June 26, 2014 and December 1, 2019, and

1         who did not receive a copy of their report before June 26, 2017." (*Id.* ¶ 1.19).

2. For purposes of the Settlement, the Court hereby finally certifies Plaintiff Deborah Hubbard as the representative of the above-described classes, and Setareh Law Group as Class Counsel.

3. The parties complied in all material respects with the notice plan set forth in Hubbard's renewed motion for preliminary approval of the class action settlement, ECF No. 42, amended settlement agreement, ECF No. 42-1, and the Court's preliminary approval order, ECF No. 45. The Court finds that Hubbard's notice to the settlement class constituted due and sufficient notice to the class of the pendency of the litigation, the existence and terms of the Settlement, class member's rights to make claims or object, and the matters to be decided at the final approval hearing. Further, the notice plan satisfied the requirements of the United States Constitution, Rule 23 of the Federal Rules of Civil Procedure, and all other applicable law. All requirements of the Class Action Fairness Act, 29 U.S.C. § 1711, et seq., have been met.

4. The Court finds that full opportunity has been given, including at the final approval hearing held on April 21, 2022, for the class members to object to the terms of the Settlement and the request for attorney's fees. To date, no objections have been submitted.

5. The Court finds that the Settlement is fair, reasonable, and adequate to the class members. The Court therefore finally approves the Settlement due to the fact that the Settlement was the product of arms-length negotiations between competent, able counsel and conducted with the oversight and involvement of a neutral mediator; the record was sufficiently developed and complete through meaningful discovery and mediation briefing that enabled counsel for the parties to adequately evaluate and consider the strengths and weaknesses of their respective positions; the litigation involved disputed claims, which underscores the uncertainty and risks of the outcome in this matter; and the Settlement provides meaningful remedial benefits for the disputed claims.

\*\*\*

Accordingly, the motion for final approval of the Settlement is granted. Pursuant to and in

accordance with Rule 23, the Court fully and finally approves the Settlement in all respects including, without limitation, the terms of the Settlement, the releases provided for therein, and the dismissal with prejudice of the claims asserted in this action, and finds that the Settlement is, in all respects, fair, reasonable, and adequate, and is in the best interests of Hubbard and the class.

The parties are directed to implement, perform, and consummate the Settlement in accordance with the terms and provisions of the Settlement. In accordance with the Settlement, and to effectuate the Settlement, Defendant will pay a total gross settlement fund of $2,257,458.54.[1] The claims administrator is hereby directed to distribute the individual shares as calculated pursuant to the proposed allocation plan within twenty-five business days of this order. Checks that are left uncashed after the void date shall be redistributed as set forth in the Settlement. No funds shall revert to Defendant. All claims against Defendant are dismissed with prejudice.

The terms of the Settlement and this order shall be binding on Defendant, Hubbard, and all class members. Hubbard and the remaining non-opt-out class members shall release Defendants and its predecessors, successors, subsidiaries, parent companies, other corporate affiliates, and assigns as described in the Settlement. ECF No. 42-1 ¶ 6.1.

Without affecting the finality of this order in any way, this Court retains continuing and exclusive jurisdiction over: (a) the parties for purposes of the administration, implementation, and enforcement of the Settlement; (b) class counsel's motion for attorney's fees; (c) the class members for all matters relating to this action.

Finding no just reason to delay entry of this order as a final judgment with respect to the claims asserted in this action, the Clerk of the Court is directed to enter judgment pursuant to Rule 54(b) against Defendant.

---

[1] This gross settlement fund reflects updated data from the settlement administrator. As Hubbard explains in her motion, "[o]n December 22, 2021, JND made the parties aware that the workweeks attributed to the Wage and Hour Settlement Class in the Class List was 110,744 (an increase of 13.1% from the estimated 97,918 workweeks in the Settlement Agreement). (Choi Decl., ¶ 19.) Accordingly, pursuant to Section 5.5.1 of the Settlement Agreement, JND calculated that an increase of 8.1% to the Wage and Hour Settlement Share was required. (*Id.*) This increase brought the Gross Settlement Amount to $2,257,458.54. (*Id.*)" ECF No. 47 at 5, n.1.

3

## II. ATTORNEY'S FEES AND COSTS

### A. Attorney's Fees

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' argument, . . . courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (internal citation omitted). "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to assess the reasonableness of the requested attorney's fee award. *Id.* at 942. "Because the benefit to the class is easily quantified in common-fund settlements," the Ninth Circuit permits district courts "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." *Id.*

The Ninth Circuit maintains a well-established "benchmark for an attorneys' fee award in a successful class action [as] twenty-five percent of the entire common fund." *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Courts in the Ninth Circuit generally start with the 25% benchmark and adjust upward or downward depending on:

> the extent to which class counsel "achieved exceptional results for the class," whether the case was risky for class counsel, whether counsel's performance "generated benefits beyond the cash settlement fund," the market rate for the particular field of law (in some circumstances), the burdens class counsel experience while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (quoting *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)). Beyond this analysis, courts often crosscheck the amount of fees against the lodestar. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941. Regardless of whether the court uses the lodestar or

4

percentage approach, the main inquiry is whether the fee award is "reasonable in relation to what the plaintiffs recovered." *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000).

### 1. Percentage of Recovery

Class Counsel requests that the Court award 25% of the settlement ($2,257,458.54), for a total of $564,364.64. The Court finds a 25% fee award presumptively reasonable because, after weighing the relevant factors, no upward or downward adjustment is warranted. Class Counsel took this case on contingency and Defendant disputed the merits of the claims. Class Counsel estimates that the allocation for the Wage and Hour Settlement Class – excluding statutory and civil penalties – "represents 22% of the damages the class could reasonably have expected to recover at trial," and that the allocation for the FCRA Settlement Class "represents 59% of expected damages." ECF No. 46 at 19. The result Class Counsel achieved relative to the risks they undertook thus supports the benchmark rate.

### 2. Lodestar Cross-Check

Courts often cross-check the amount of attorney's fees using the lodestar method. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. When conducting a lodestar cross-check, a court takes "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckhart*, 461 U.S. 424, 433 (1983). "[T]he determination of fees 'should not result in a second major litigation'" and "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (quoting *Hensley*, 461 U.S. at 437). Rather, the courts seek "to do rough justice, not to achieve auditing perfection." *Id*.

A district court must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (citation omitted). Additionally, the reasonable hourly rate must be based on the "experience, skill, and reputation of the attorney requesting fees" as well as "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), *amended on other grounds*, 808 F.2d 1373 (9th Cir. 1987). To inform

5

1   and assist the Court in making this assessment, "the burden is on the fee applicant to produce

2   satisfactory evidence . . . that the requested rates are in line with those prevailing in the community

3   . . . ." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

4   Class Counsel states that their rates range from $325 for the most junior associate to $900

5   per hour for the most senior partner. Those hourly rates are reasonable in this district. *See, e.g., In

6   re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D.

7   Cal. Sept. 2, 2015) (awarding attorney's fees that ranged from $310 to $800 for associates and

8   partners rates from $480 to $975); *Banas v. Volcano Corp.*, No. 12-cv-01535-WHO, 2014 WL

9   7051682, at *5 (N.D. Cal. 2014) (finding rates ranging from $355 to $1,095 per hour for

10  associates and partners within the range of prevailing rates). They further state that they spent

11  310.85 hours on this matter, which is reasonable for a case that was filed in July 2019 and went

12  through mediation and then settlement. The 310.85 hours counsel spent on this case results in

13  $209,981.25 in fees, which results in a multiplier of 2.69. "[M]ultiples ranging from one to four

14  are frequently awarded in common fund cases when the lodestar method is applied." *Vizcaino v.

15  Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (quoting *In re Prudential Ins. Co. Am.

16  Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)).

17  **B.   Reimbursement of Costs**

18  An attorney is entitled to "recover as part of the award of attorney's fees those out-of-

19  pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24

20  F.3d 16, 19 (9th Cir. 1994) (citation omitted). Class counsel seeks $13,731.24 in costs. After

21  reviewing an itemized list of costs incurred during this litigation, the Court finds the charged costs

22  reasonable. *See* ECF No. 47-1 at 21. The Court therefore holds that class counsel is entitled to

23  reimbursement of $13,731.24.

24  **C.   Service Award**

25  Hubbard seeks a service award of $7,500 for dedicating 30 hours, including travel time, in

26  connection with the case as the named plaintiff. Hubbard states that her activities "have included

27  but have not been limited to: obtaining legal counsel, speaking with [her] legal counsel on

28  numerous occasions, both in person and over the phone, assisting them in gathering information,

identifying the claims brought in this case, gathering contact information of [her] former coworkers, gathering documents from [her] employment with Defendant, and participating in a full-day mediation." ECF No. 47-3 ¶ 9. She also states that she has "spent time carefully reviewing the Settlement, and other case-related documents on [her] own and with [her] counsel to make sure that the Settlement and other work [her] attorneys performed [were] in the best interest of the class." *Id.*

Service awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ' g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (internal citation omitted). "[D]istrict courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

"Courts may consider the following criteria in determining whether to provide incentive awards: '(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.'" *Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 WL 6623224, at *4 (N.D. Cal. Dec. 16, 2013) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)).

As a starting point, several courts in this district have found that incentive payments of $5,000 are presumptively reasonable and $10,000 payments are considered high. *See, e.g., Chu v. Wells Fargo Invs., LLC*, Nos. C 05–4526 MHP, C 06–7924 MHP, 2011 WL 672645, at *5 (N.D. Cal. Feb. 16, 2011) (stating that $10,000 is "perhaps somewhat on the high end of the acceptable range for the size of the class [approximately 2,700 members] and the amount of the settlement [$6.9 million]"); *Jacobs v. California State Auto. Ass'n Inter-Ins. Bureau*, No. C 07–00362 MHP, 2009 WL 3562871 (N.D. Cal. Oct. 27, 2009) (stating that "[a] $25,000 incentive payment is quite high for this district, in which a $5,000 payment is presumptively reasonable"; rejecting $25,000

7

request and awarding $7,500 instead); *Hopson v. Hanesbrands Inc.*, No. CV–08–0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (stating that, "[i]n general, courts have found that $5,000 incentive payments are reasonable"); *see also Wren v. RGIS Ins. Specialists*, No. C–06–05778 JCS, 2011 WL 1230826, at *36 (N.D. Cal. Apr. 1, 2011) (noting that "there is ample case law finding $5,000 to be a reasonable amount for an incentive payment"). Courts will, however, grant an award that exceeds $5,000 when it is warranted. *See, e.g.*, *Harris v. Vector Mktg. Corp.*, No. C–08–5198 EMC, 2012 WL 381202, at *7-8 (N.D. Cal. Feb. 6, 2012) (granting a $12,500 award where the class representative signed a broader general release than did her fellow class members, spent more than 100 hours on the litigation, had her friends and family subpoenaed, and was compelled to release private information).

Hubbard's role in the case does not go beyond ones that other courts have found warranted $5,000 incentive awards. *See Fleury v. Richemont N. Am., Inc.*, No. C–05–4525 EMC, 2008 WL 3287154, at *6 (N.D. Cal. Aug. 6, 2008) (awarding $5,000 incentive award where plaintiff was involved in litigation for three years, sat for a deposition, responded to written discovery, and attended a mediation session); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013) (awarding $5,000, rather than the requested $10,000, where the named plaintiff "was deposed twice, attended three settlement conferences, and spent a total of 80 hours" on the case). Second, the incentive award would be paid from the settlement fund, not by Defendant. ECF No. 42-1 ¶ 5.3. That weighs against an award higher than $5,000. *Cf. Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 336 (N.D. Cal. 2014) (finding that an agreement "requir[ing] Wells Fargo to pay the incentive awards, so class members will not fund the awards," favors an award higher than $5,000). Third, although Hubbard argues that she may face risks finding employment because it is a matter of public record that she sued a former employer, ECF No. 47-3 ¶ 11, she does not currently work for Defendant, and thus her "suggestion that her future employment is threatened is entirely speculative." *Harris,* 2012 WL 381202, at *7.

Based on these considerations, the Court finds that Hubbard is entitled to a $5,000 incentive award for the time and effort spent in connection with this litigation and the risks taken

on behalf of fellow class members.

### D. Settlement Fund Administrator Award

The Court finds that the maximum settlement fund administrator costs of $40,000 set forth in the settlement agreement are reasonable. According to the settlement administrator, the fees and costs incurred currently stand at $39,156.34. ECF No. 48 at 3. The Court approves an award in that amount.

### CONCLUSION

For the reasons stated above, the Court grants Hubbard's motion for final approval of the class action settlement. The Court also grants Hubbard's motion for attorney's fees, litigation costs, a service enhancement award, and settlement fund administrator award, subject to the adjustments described in this order. Class Counsel is entitled to $564,364.64 in attorney's fees and $13,731.24 in litigation costs. Hubbard is entitled to a service award of $5,000. The settlement administrator is entitled to $39,156.34. The parties and settlement administrator are directed to implement this order and the Settlement Agreement in accordance with their terms.

Class counsel shall file a post-distribution accounting within 21 days after the distribution of settlement funds. In addition to the information contained in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, the post-distribution accounting shall discuss any significant or recurring concerns communicated by class members to the settlement administrator or counsel since final approval, any other issues in settlement administration since final approval, and how any concerns or issues were resolved.

The Court will withhold 15% of the attorney's fees granted in this order until the post-distribution accounting has been filed. Class counsel shall file a proposed order releasing the remainder of the fees when they file their post-distribution accounting.

This matter is set for a further case management conference on January 24, 2023 at 2:00 p.m., with a case management statement due on January 17, 2023. The parties may request that the case management conference be continued if additional time is needed to complete the distribution. The conference will be vacated if the post-distribution accounting has been filed and

9

the Court has released the remaining attorney's fees.

The parties shall submit a stipulated proposed form of judgment within 14 days of this order.

**IT IS SO ORDERED.**

Dated: July 25, 2022



_____
JON S. TIGAR
United States District Judge